THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENJAMIN BRIGGS GOODRICH, Plaintiff in Error.

*Opinion filed October 25, 1911—Rehearing denied Dec. 6, 1911.*

1. CRIMINAL LAW—*alleged improper relations between prosecuting witness and accused cannot be shown.* In a prosecution for larceny and embezzlement by an agent, alleged improper relations between the prosecuting witness and the accused cannot be shown, as such proof would furnish no justification for the larceny nor tend to show any motive on the part of the prosecuting witness to testify falsely.

2. SAME—*what is not such joint ownership of fund as precludes embezzlement.* The mere fact that at the time when an agent took and converted to his own use $5000 of his principal's money, which he took from her safety deposit box in his capacity as her deputy, the principal was indebted to him for some $300 does not constitute the agent a joint owner of the fund, such as would preclude his committing embezzlement by using the money. (*McElroy* v. *People,* 202 Ill. 473, distinguished.)

3. SAME—*the pronouns "he" and "his" in instruction concerning the credibility of witnesses refer to both sexes.* The pronouns "he" and "his," used in an instruction stating that the jury should consider the circumstances under which any witness has testified; his interest, if any, in the outcome of the case; the relations which he bears to the State or to the defendant, etc., refer to both male and female witnesses, and the instruction is not prejudicial even though the principal witness for the prosecution is a woman.

4. APPEALS AND ERRORS—*party is required to show in his brief wherein ruling is erroneous.* The rule of the Supreme Court requiring a party to show by his brief the errors relied upon for reversal does not mean that he shall only set out the alleged erroneous rulings, but means that he shall present his reasons to show wherein the ruling complained of is erroneous.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding.

BENJAMIN C. BACHRACH, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and FRED H. HAND, (FREDERICK BURNHAM, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Benjamin Briggs Goodrich, the plaintiff in error, was convicted in the criminal court of Cook county under an indictment charging him with larceny and embezzlement and was sentenced to the penitentiary for an indefinite term. He has brought the record of the criminal court here by writ of error and seeks a reversal of the judgment of conviction.

The record discloses that on October 19, 1908, Dora McDonald, the prosecuting witness, rented from the Chamber of Commerce Safety Vault Company a safe deposit box in the vaults of that company and on the same day placed therein $5000 in currency; that she delivered one of the keys to the safe deposit box to plaintiff in error, who was then, and had been since June 8, 1908, her general business agent acting under a power of attorney from her, and directed the company to allow him access to the safe deposit box; that she left for Mexico on October 28, 1908, returning to Chicago on the 16th of November, and that while she was in Mexico plaintiff in error removed the $5000 from the safe deposit box and lost at least $3500 of it speculating in steel stock. Plaintiff in error testified that his speculation in steel stock which resulted in the loss of the money was made under the direction of Mrs. McDonald and on her behalf; that $3500 of the $5000 was lost in this manner, and that he delivered the remaining $1500 to her in Texas on or about November 12, 1908. Mrs. McDonald, on the other hand, testified that before leaving for Mexico she directed plaintiff in error to make certain weekly payments to certain of her relatives and to pay certain bills out of the $5000 during her absence from the city, but denied that she authorized him to use any portion of the money in speculation or in any other manner than in making the weekly payments and paying the bills mentioned by her in her testimony. She further testified that soon after

she had reached Mexico she received telegrams from plaintiff in error requesting her to return to Chicago, and that she replied, by telegram, that she was not then ready to return; that he then made an appointment, by telegram, to meet her at Diaz, Mexico; that immediately after his arrival at Diaz they crossed the Mexican line into Texas, and that plaintiff in error then informed her that he had stolen the $5000 and had lost it speculating in steel stock; that he thereupon agreed to return to Chicago and to re-pay the money in small amounts as he should earn it; that she left Texas and was to meet plaintiff in error in St. Louis, but that when she reached St. Louis she was handed a telegram from him in which he stated that he did not intend to return to Chicago. She denied that he delivered $1500, or any other sum, to her while in Mexico or Texas.

Plaintiff in error having admitted taking the money and losing a large portion of it speculating in steel stock, the principal issue in the case, therefore, was whether Mrs. McDonald authorized and directed him to use the $5000, or a portion thereof, in that manner, or whether the speculation was undertaken by plaintiff in error in his own behalf, without the knowledge or consent of Mrs. McDonald. The only direct evidence upon this issue consisted of testimony given by plaintiff in error and Mrs. McDonald. He testified that he was directed to use the money for that purpose in her behalf. She denied any such authority or direction.

While in Texas the plaintiff in error wrote two letters, which, in our opinion, are wholly inconsistent with his innocence and which corroborate the testimony of Mrs. McDonald upon the principal issue in the case. One of these letters, dated November 13, and addressed to his mother, was as follows: "If you hear I am down and out financially I don't want you to blame Dodo. As a matter of fact, I have given her much the worst of it. Am starting over now and will make good." It was shown that the

name "Dodo" was one by which the plaintiff in error frequently addressed Mrs. McDonald and that his mother knew to whom that name referred. After this letter was written plaintiff in error concluded not to send it and left it lying on a table, where Mrs. McDonald afterwards found it and took it with her to Chicago, and it was introduced in evidence upon the trial of the cause. The other letter, also introduced in evidence by the People, was addressed to and received by an attorney in Chicago who had been representing plaintiff in error in those matters in which the latter had been acting as agent for Mrs. McDonald, and was, in part, as follows: "Am in to my limit with Mrs. Mc., and all because I gave her the worst of it. She is more than square and deserves better than I gave her. She is in bad and needs money. Do the best you can for her and get something out of the estate as soon as possible. * * * Guess you can figure out a way to straighten this out. Tell her I am not as bad as it might seem. As a matter of fact I have $32 in the world, and God knows what I am going to do. At any rate I shall drop off the map until I get a start again and will then let you hear from me. * * * Don't think too hard of me, Jake, and don't tell any of the bunch what she tells you, and fix things up for me so talk won't get around. Please do the best you can by me, Jake." The estate referred to in this letter was the estate of Michael C. McDonald, deceased, from which Dora McDonald, as surviving widow of the deceased, had received a large sum of money, of which the $5000 was a part.

It would serve no useful purpose to set out in this opinion any more of the large volume of circumstantial evidence, including a detailed confession by plaintiff in error to a fellow prisoner, made while confined in the county jail awaiting trial, which further tends to establish the guilt of plaintiff in error. The record contains ample evidence to sustain the verdict of guilty which was returned by the jury in the case. Indeed, the chief complaint of plaintiff in er-

ror concerns the rulings of the trial court in admitting and excluding evidence and in passing upon instructions.

Plaintiff in error, upon the cross-examination of Mrs. McDonald, propounded numerous interrogatories concerning the past life of Mrs. McDonald and her personal relations with plaintiff in error, to which the court sustained objections. It is stated in the brief and argument filed by plaintiff in error in this court that the purpose of those interrogatories was to elicit testimony showing improper relations between plaintiff in error and Mrs. McDonald prior to the taking of the money by him, and that the court erred in sustaining the objections to those interrogatories. Such testimony was clearly incompetent and was properly excluded. Proof of improper relations between plaintiff in error and Mrs. McDonald would have furnished no justification for his act in converting her money to his own use. In support of his contention that such proof was competent, plaintiff in error cites authorities to the effect that for the purpose of attacking the credibility of a witness it is proper, upon cross-examination, to inquire about anything tending to show bias or prejudice on the part of a witness or to show the friendship or enmity to either of the parties, or anything which tends to show that in the circumstances in which he is placed he has a strong temptation to swear falsely. Conceding the right of plaintiff in error to inquire, upon cross-examination, concerning any matter which might tend to show a motive on the part of Mrs. McDonald to testify falsely against him, the mere fact that they may have been unduly intimate up to the time of the conversion of the money by him would not tend to show such motive. Had her testimony been in his favor such proof might have been admissible, as held in *Brown* v. *State,* 119 Ga. 752, cited by plaintiff in error.

Plaintiff in error complains of the exclusion of other evidence which was offered by him for the purpose of showing improper relations between these parties. The prof-

fered evidence was equally incompetent with that sought to be elicited upon the cross-examination of Mrs. McDonald, and could not have been properly received for the purpose of impeaching her credibility as a witness. *Dimick* v. *Downs,* 82 Ill. 570.

The record shows that shortly after the appointment of the plaintiff in error by Mrs. McDonald as her agent on June 8, 1908, there was paid into the First National Bank of Chicago, as the proceeds of sale of the dower interest of Mrs. McDonald in certain real estate, $52,068.90, under an agreement that the bank should first pay out of that sum to certain creditors of Mrs. McDonald claims aggregating about $32,000 and should then pay the balance to plaintiff in error. When plaintiff in error received this $20,000 balance from the First National Bank he deposited it in another bank to his credit, as trustee. He thereafter paid out various sums on behalf of Mrs. McDonald, until there was but $7000 left. On October 19, 1908, at her request he withdrew the $7000 in cash and delivered it to Mrs. McDonald. She gave plaintiff in error $1000 of this amount, retained $1000 for her own use, and the remaining $5000 was the money which she placed in the safe deposit box. Plaintiff in error testified that at the time the $5000 was placed in the safe deposit box Mrs. McDonald was indebted to him in the sum of $344.14, and that at that time she said to him, with reference to that indebtedness: "Now, let this $300 go; you do not need it; $1000 is enough for you; I will put it in with the $5000." Plaintiff in error also offered in evidence a statement signed by Mrs. McDonald, under date of September 20, 1908, in which she acknowledged the correctness of an account then submitted to her by plaintiff in error showing a balance of $344.14 due him from her. Mrs. Churchill, the mother of plaintiff in error, testified on his behalf to a conversation with Mrs. McDonald after the arrest of plaintiff in error, in which Mrs. McDonald stated to the witness that "$300 of that

money was Briggs', and we just put it in there as part of my money." Kate A. Turpin, Mrs. McDonald's maid, also testified, on cross-examination by the plaintiff in error, that during the month of October, 1908, Mrs. McDonald told plaintiff in error, in the presence of the witness, that she would admit that she owed him $300. The People, on the other hand, introduced in evidence a receipt signed by the plaintiff in error, under date of October 28, 1908, acknowl-edging payment in full by Mrs. McDonald to that date, and also the following statement signed by him, under date of October 27, 1908: "I hereby state that Dora McDonald has appointed me her deputy and that as said deputy I have access to her vault, which contains ($5000) five thousand dollars in cash, which is her property." Mrs. McDonald denied making the statements attributed to her by plaintiff in error and his mother, Mrs. Churchill, and testified that the payment of $1000 to plaintiff in error on October 19 was in discharge of all her obligations to him, and that the receipt of October 28 was given by him to evidence such payment in full. It is also to be noted that plaintiff in er-ror testified that he lost $3500 speculating in steel stock and delivered the remaining $1500 of the $5000 to Mrs. Mc-Donald in Texas. With the record in this condition, plain-tiff in error contends the court committed reversible error in refusing the following instruction submitted by him:

"The jury are instructed if you believe, from the evi-dence, that the defendant, Benjamin Briggs Goodrich, was at the time of the alleged embezzlement the agent of Dora McDonald, and in the settlement of his accounts with her thereafter had a balance due him which was a part of the $5000 deposited in the safety deposit vault, then you should find the defendant not guilty."

This instruction was properly refused. There was no evidence tending to show any settlement of accounts after the time of the alleged embezzlement in which it was ascer-tained that plaintiff in error had a balance due him, and the

instruction was therefore in that respect not based upon the evidence. Neither was there any evidence tending to show such an interest in the fund as would relieve plaintiff in error from the criminal charge for the conversion thereof. It is true, as stated in *McElroy* v. *People,* 202 Ill. 473, that "where a defendant has an interest in the property or money alleged to have been fraudulently converted to his or her own use there can be no conviction of the crime of embezzlement." But this does not mean that a creditor may with impunity steal a large sum of money from his debtor and be immune from punishment because he is entitled to have his claim paid out of money belonging to the debtor. The controlling fact upon which the decision in the *McElroy case* was based was that the defendant was entitled to deduct certain commissions from the fund which she was charged with embezzling, and it was therefore held that she was a joint owner of the fund and for that reason was not guilty of fraudulently converting the property of another. In the recent case of *People* v. *O'Farrell,* 247 Ill. 44, the defendant invoked the decision in the *McElroy case* in support of his contention that he could not be convicted of embezzling a fund received from the sale of property because he was entitled to commissions or compensation for making such sale, but we held that the right to commissions or fees does not constitute a joint ownership of the fund collected unless the terms of the contract which creates the agency expressly provide that the agent collecting the fund has the right to retain from the particular fund his commissions or fees. In the case at bar the evidence shows that plaintiff in error delivered the $7000 which he withdrew from the bank to Mrs. McDonald as her property, that she paid him $1000 and retained $1000 for her own use, and that she placed the remaining $5000 in the safe deposit box. The evidence does not tend to show that plaintiff in error claimed any interest in the $7000 which he delivered to Mrs. McDonald, or that he thereafter had any portion of

the $5000 in his possession prior to the time it was placed in the safe deposit box. The utmost that the jury could have found from the evidence was that Mrs. McDonald owed plaintiff in error about $300, which she expected to pay out of that $5000 but did not desire to pay him at that time. This falls far short of establishing that plaintiff in error was a joint owner of the fund placed in the safe deposit box by Mrs. McDonald, and an instruction informing the jury that if they should find that he was a joint owner of the fund they should find him not guilty, which is evidently the purport of the instruction which was refused, had no bearing upon the issues in the case.

Plaintiff in error also contends that the court erred in giving to the jury an instruction, in part, as follows:

"The court instructs the jury that the jury are the sole judges of the credibility of the witnesses. In judging the credibility of the witnesses in this case you should carefully scrutinize the testimony given, and in doing so consider all the circumstances under which any witness has testified; his demeanor and manner while on the stand; his interest, if any, in the outcome of the case; the relations which he bears to the State or to the defendant; the manner in which he might be affected by the verdict, and the extent to which he is contradicted or corroborated by other credible evidence, if at all, and any circumstances that tend to shed light upon his credibility."

The criticism made against this instruction is, that as between the two most important witnesses, viz., plaintiff in error and Mrs. McDonald, by the use of the pronouns "his" and "he" the instruction requires the jury to give special attention to the credibility of the former without requiring them to give the same attention to the credibility of the latter. This criticism is hypercritical. The instruction informs the jury that in judging the credibility of "the witnesses" in this case they should carefully scrutinize the testimony given, and in doing so consider all the circumstances

under which "any witness has testified," thus extending the instruction so as to include the male and female witnesses in the case, and the fact that the instruction then proceeds, "his demeanor," etc., cannot fairly be said to limit the application of the instruction to male witnesses alone. The pronouns "his" and "he" are commonly used to refer to any member of a class composed of males and females, and, while not technically correct, is of such common usage that when used in the connection in which they are used in the above instruction, it is hardly possible that the jury could have received the impression from the instruction that they should apply any different tests in determining the credibility of male witnesses than they applied in determining the credibility of female witnesses.

Complaint is also made of the refusal of other instructions. All that is stated in the brief and argument of plaintiff in error with reference to these instructions is that there was error in refusing them. No authorities are cited and no points made as to why these instructions were not properly refused, and no reference is made to them in the argument. The alleged errors of the court in refusing the same will therefore not be considered. *Devine* v. *Federal Life Ins. Co.* 250 Ill. 203.

Certain rulings of the court upon the admission and exclusion of evidence, other than those relating to the exclusion of evidence sought to be elicited upon cross-examination of Mrs. McDonald for the purpose, as counsel for plaintiff in error states, of showing improper relations between plaintiff in error and Mrs. McDonald, are set out by plaintiff in error in a division preceding his brief and argument. A bare statement is made of the substance of the evidence admitted or of the questions to which objections were sustained, followed by the ruling of the court and the general statement that all such rulings were erroneous. No attempt is made to show the connection or lack of connection between the evidence admitted or sought to be elicited

and the issues in the case. No authorities are cited in this connection and no mention is made of these alleged errors in the argument. The rules of this court require a plaintiff in error to show, by his brief, the errors relied upon for a reversal. This rule does not mean that he is only required to set out the ruling of the court, but requires him to show wherein the ruling was erroneous. This necessarily contemplates that a plaintiff in error must present his reasons why the particular ruling complained of is erroneous. No reasons are advanced by the plaintiff in error in this case in support of his assertion that the court erred in admitting or excluding evidence, other than in connection with the contention that the court erred in restricting the cross-examination of Mrs. McDonald. We have examined the evidence thus pointed out, however, and while portions of it should not have been admitted, the error thus committed was not so prejudicial as to warrant a reversal of the judgment. The guilt of plaintiff in error was clearly established by the competent evidence, and the judgment of the criminal court will be affirmed.

*Judgment affirmed.*