THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VITO PELLETRI *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1926.*

1. CRIMINAL LAW—*when the record must be free from error.* Where a conviction must rest upon the identification of the defendants as the parties who committed the crime charged and the evidence of identification is close, the record must be reasonably free from such errors as are likely to influence the jury in weighing the testimony of the several witnesses.

2. SAME—*court should not indicate hostile attitude toward defendants.* Defendants are not given a fair trial where the trial judge by his demeanor and remarks and persistent cross-examination of the defendants indicates a hostile attitude and impresses the jury with his belief in the defendants' guilt.

3. SAME—*cross-examination of witnesses identifying defendants should not be unduly restricted.* Where a conviction of larceny rests largely on the testimony of two witnesses who saw the crime committed and who testify that the defendants are the parties who engaged in the crime, the defendants are entitled to test the accuracy of their identification by cross-examination as to any matter to explain, modify or discredit the direct testimony of the witnesses, and the trial court, while it may hold the cross-examination within reasonable and proper limits, has no right to substantially deny such examination by unduly limiting it or by discrediting it by impertinent remarks.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

S. B. McDONNELL, JR., (ELWYN E. LONG, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, CLARENCE E. NELSON, and CHARLES J. MUELLER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiffs in error, Vito Pelletri and Patsy Pargoni, were convicted in the criminal court of Cook county of the larceny of cigars from a truck of the General Cigar Company and sentenced to the State reformatory. They prosecute this writ of error to reverse the judgment.

The General Cigar Company provided its city salesman with a Dodge car equipped with a closed compartment containing sufficient trays to carry a stock of 18,000 cigars. The salesman called on the trade and filled the orders from this stock. About 12:30 o'clock P. M. June 10, 1925, the salesman parked his car and went across the street to call on a customer at 1715 Mohawk street. The compartment containing his stock of cigars was left padlocked. While he was in the store the lock of the compartment was broken and 5150 cigars taken. He reported his loss to the police. About two o'clock P. M. the cigars were found by two police officers in a Ford touring car standing in the alley at the rear of 1852 West Taylor street. Plaintiffs in error were standing by the fence, about twenty or twenty-five feet from the automobile. One of the officers walked up to them and asked them what they were doing there, and they replied that they had come into the alley to urinate, which he saw they had done. He questioned them about

323—12

the automobile standing near them, and they said they knew nothing about it and that it was standing there when they came into the alley.

There were two eye-witnesses to the larceny of the cigars. Miss Emma Simon, who lived above the grocery store where the salesman was making his call at the time of the larceny, testified that from her window she saw two men drive a Ford touring car alongside the truck; that one of the men got out of the Ford, opened the cigar compartment of the truck, took cigars from it and put them in the Ford; that the Ford was headed north and the driver was sitting on the side of the car farthest from her; that she saw the driver of the car and saw how he was dressed; that he wore a dark-colored cap and a sweater. She had never seen the man before and on this occasion saw him but a few seconds. She says the driver was Vito Pelletri. Mrs. Josephine Platzie was walking along the sidewalk across the street from the truck at the time the cigars were being stolen. She saw a man break the lock and take the cigars from the truck. She identifies Patsy Pargoni as the man whom she saw taking the cigars. She says that he was wearing a cap and a gray suit. These women were taken together to the police station to identify plaintiffs in error after they had been arrested. Mrs. Platzie testified that she saw the prisoners at the station the day following the larceny, but Miss Simon states that she saw the prisoners there five or six days after the commission of the crime.

Officer John F. Lyendecker, who arrested plaintiffs in error, testified that at the time of their arrest one was wearing a dark suit and a hat and the other was dressed in a blue suit and a cap. He testified that neither of them wore a sweater.

Plaintiffs in error testified that they are employed as teamsters' helpers and have been so employed by their respective employers for more than a year and a half; that they are cousins; that they left Pargoni's house, at 1816

South Winchester, about one o'clock P. M. and started to walk to Taylor street, where they intended to board a street car bound for VanBuren and State streets; that they intended to go to a show; that while they were waiting for the car they decided to go into the alley to urinate; that they saw a Ford touring car standing in the alley and that they stopped about twenty-five feet from it; that they were arrested while standing at one side of the alley. Pargoni testifies that 1700 Mohawk street is about two miles from where he lives. Plaintiffs in error deny that they had any connection with the Ford touring car or that they took the cigars from the General Cigar Company's truck.

Excepting the testimony of Miss Simon and Mrs. Platzie there is no evidence in the record connecting plaintiffs in error with the automobile found by the police in the alley. It is not shown who owns this automobile or whether either of plaintiffs in error was ever seen in possession of it. The conviction of plaintiffs in error rests almost entirely upon the testimony of the two women who saw the cigars stolen. They were across the street from the men who were stealing the cigars and observed them under circumstances which did not give them a good opportunity to fix in their minds features and characteristics which would enable them to identify the men later. According to the description of the clothes of plaintiffs in error given by the arresting officer they were not dressed the same as the men described by the women. Where the evidence of identification is close, as it is in this case, the record should be reasonably free from such errors as are likely to influence the jury in weighing the testimony of the several witnesses.

During the cross-examination of Miss Simon she was being questioned about her identification of Pelletri, and for the purpose of testing her knowledge of his appearance counsel asked her, "As far as you know he never was around there after that, was he?" and she answered, "No; he better not be." Counsel then said, "Why, are you mad at

him?" and the court interposed, "What's the next?" Counsel said, "Well, I would like to——," and the court ended the examination by saying, "Well, I will ask her to-night on the way home."

Mrs. Platzie had identified Pargoni, and to test the accuracy of her identification counsel conducted the following cross-examination:

Q. "What kind of a hat did this fellow have on?

A. "He got a cap.

Q. "And what was the color of his cap? (No answer.)

Q. "Do you know the color of the suit he wore?

A. "I think it was gray.

Q. "Are you sure?

A. "Yes.

Q. "Did he have an overcoat on?

A. "No; it was summer.

Q. "And did he have a collar on?

A. "Collar?

The court: "Oh, I don't think we should go into detail.

Attorney: "Well, she is positive that is, the man. I would like to know that.

The court: "Generally, yes; but whether he had a stickpin in his tie is not material."

During the cross-examination of Pargoni the court twice asked a series of questions concerning the route taken by Pargoni from his house to the alley where he was arrested, indicating that the court did not believe his story. Counsel objected "to the manner and form" of the cross-examination but the court persisted.

In *Dunn* v. *People,* 172 Ill. 582, this court said: "It is within the power of the court to propound pertinent and properly-framed questions to a witness. The exercise of the power, if the questions propounded by the court are directed to crucial points of the case, is most likely to arouse the serious apprehension of the one or the other of the parties, and certainly places counsel in a situation of great

embarrassment if they conceive a question asked by the court is leading and suggestive in form or improper for any cause. It is a task of great delicacy and much difficulty for a presiding judge to so conduct the examination of a witness that nothing, in either the tone or inflection of the voice, the play of the features, the manner of propounding or framing the question or the course of investigation pursued in the examination will indicate to the jury the trend of the mind of the questioner. An extended examination of a witness by the court must be unfair unless it partakes partly of the nature of a cross-examination, and though great skill and tact and perfect fairness be employed, there is much danger the impression or opinion of the court as to the truthfulness, candor and reliability of the witness and as to the weight and value of his testimony will be manifested to the jury. Though at times the court may, by an opportune and carefully considered question, elucidate a point, aid an embarrassed witness or facilitate the progress of a trial without in any degree influencing the jury or arousing distrust in the minds of the parties or their attorneys, yet the examination of witnesses is the more appropriate function of counsel, and it is believed the instances are rare and the conditions exceptional in a high degree which will justify the presiding judge in entering upon and conducting an extended examination of a witness, and that the exercise of a sound discretion will seldom deem such action necessary or advisable."

The demeanor and the remarks of the trial judge left no doubt in the minds of the jury as to his hostile attitude toward plaintiffs in error. A defendant cannot have a fair trial when the judge's belief of his guilt is impressed on the jury. No person can successfully perform the functions of prosecutor and judge. They are inconsistent. *People v. Judycki,* 302 Ill. 143.

This is a close case. The conviction rests largely on the testimony of the two women who witnessed the larceny of

the cigars. Plaintiffs in error were entitled to test the accuracy of their identification by cross-examination. They were entitled to question them concerning any matter which went to explain or modify or discredit what they had stated in their direct examination. The trial court has the right to hold the cross-examination within reasonable and proper limits, but it has no right to substantially deny cross-examination of a witness by unduly limiting it or by discrediting it by impertinent remarks. If plaintiffs in error are guilty of this crime their guilt can be established in an orderly trial. Until it is so established a conviction cannot be sustained.

The judgment is reversed and the cause is remanded to the criminal court of Cook county for a new trial.

*Reversed and remanded.*