**People of the State of Illinois, Defendant in Error, v. John B. Smith, Plaintiff in Error.**

Gen. No. 52,160.

First District, Third Division.

June 27, 1968.

William Bruce Hoff, Jr., of Chicago, for plaintiff in error.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

The defendant was charged with having taken, or committed the offense of, indecent liberties with a three-and-a-half-year-old boy. At a bench trial he was found guilty and sentenced to an indeterminate term of not less than nineteen years, ten months, nor more than twenty years, in the Illinois State Penitentiary at Menard. Defendant was fifty-two years of age at the time of the occurrence.

Defendant contends that the trial court improperly limited defense counsel in his cross-examination of the State's principal witness; that defendant's guilt was not established beyond all reasonable doubt, and that the court's finding of guilty and the sentence imposed were the results of passion and prejudice.

The State's principal witness, Mrs. Pearl Maggio, testified that on October 14, 1960, at approximately 3:15 p. m. she was walking through a viaduct on 25th Street in Chicago between Canal and Stewart Streets. The viaduct is a full block long and there were no lights under it. It was a dark rainy day. Under the viaduct there were sidewalks on both sides of the street. At the edges of the sidewalks and in the center of the street were rows of

concrete pillars. The street was wide enough for two lanes of traffic in each direction.

When she had travelled about one-third the length of the viaduct she saw a man (defendant) and a little boy. When about two feet from them she noticed that the man was taking the boy's pants down. Thinking that the boy probably had to go to the washroom, and not wanting to embarrass them, she "crossed over" and continued walking in the street along the center row of pillars. As she reached Stewart Street she heard the boy cry out. She returned to where the man and boy were standing and saw the boy with his face pressed against the wall of the viaduct by the defendant. The front of the defendant was against the back of the boy. As she approached, defendant jumped up from a crouching position and she saw that his pants were open and his private parts were exposed.

Mrs. Maggio pulled the child toward her and asked defendant what he was doing to the boy. Defendant replied, "He has appendix, I'm taking him to the hospital." When asked if the child was his, defendant replied, "Yes, I'm his father." Mrs. Maggio and defendant had a brief struggle and then he grabbed the child, pulled up his pants and took him toward Stewart Street. Mrs. Maggio followed, a foot or two behind them. As they reached Stewart Street she stopped them and asked the boy if defendant was his father. The child did not reply. She then put her hand out and asked the boy if he would like to go with her and he took her hand. Smith then said, "Take that God-damned kid. I'm through with him." Mrs. Maggio yelled to a passing truck driver to apprehend defendant. The latter started to run but was caught and taken to the trucking office where defendant again said he was the boy's father. The police were summoned and arrested defendant.

Mary West testified that she was part owner of Capitol Press where defendant was a part-time employee on

October 14, 1960. Sometime between 1 p. m. and 3 p. m. defendant came into the shop with a small boy whom she identified as the victim of the crime. When asked if the boy was his, defendant replied that he was. Defendant had come to the office for his last paycheck and was there about five minutes.

Mary Vickery testified that her son Ronald, the victim, left her house about 1:15 p. m. to play and that she next saw him about 4 p. m. at the police station with Mrs. Maggio.

██ ██ Defendant first contends that the trial court improperly limited defense counsel in his cross-examination of Mrs. Maggio. He argues that the conditions under which she saw the defendant and the boy were not ideal for observation and that counsel was not permitted to question the witness as to her power of observation. It should be noted that the questions asked required conclusions from the witness and were improper in form. Defendant relies on People v. Del Prete, 364 Ill 376, 4 NE2d 484, wherein the court said on page 379:

> "The entire case depended upon an identification made by one witness, and reasonable latitude should have been granted the defendant to test the means of observation and the accuracy of the memory of that witness. While considerable latitude and discretion are permitted to a trial judge in controlling the limits of cross-examination, yet so far as it relates to facts in issue or facts relevant to the issue it may be pursued as a matter of right. (Spohr v. City of Chicago, 206 Ill 441.) A witness may be cross-examined as to his direct testimony—as to whatever goes to explain, modify or discredit what he has previously stated. (Chicago City Railway Co. v. Creech, 207 Ill 400.)"

There is no indication in that case as to whether the questions not allowed were proper in form.

In People v. Pelletri, 323 Ill 176, 153 NE 591, the court held at page 182:

> "The trial court has the right to hold the cross-examination within reasonable and proper limits, but it has no right to substantially deny cross-examination of a witness by unduly limiting it or by discrediting it by impertinent remarks. If plaintiffs in error are guilty of this crime their guilt can be established in an orderly trial. Until it is so established a conviction cannot be sustained."

In that case the trial court had engaged in extensive cross-examination of witnesses and had displayed partiality throughout the trial. Both of the above cases give guidelines for a court with regard to limitation of cross-examination of witnesses. In the instant case the record discloses that counsel made no attempts to rephrase his questions or elicit the testimony in another manner. The court's rulings in the instances complained of were proper and cross-examination was not unduly limited.

██ Defendant next contends that his guilt was not established beyond all reasonable doubt. The alleged reasonable doubt was created by the fact that although Mrs. Maggio first noticed the defendant and the boy from a distance of about fifteen feet, it was not until she was one or two feet from them that she saw defendant was taking down the boy's pants, and yet her subsequent observations of the acts and positions of the parties were made from a distance of more than twelve feet. Mrs. Maggio testified that she first noticed the people at a fifteen-foot distance and that she walked a little way toward them before she noticed what the man was doing. She was just a couple of feet away when he pulled the boy's pants down. The testimony does not show that she was unable to observe from a distance of more than two feet but rather that the man actually disrobed the boy when she was quite close to them. Mrs. Maggio's testi-

mony was clear and unshaken upon cross-examination. If believed, it was sufficient to sustain a finding of guilty. The trier of fact evidently believed her and we cannot say from a review of all the evidence that such a conclusion was unreasonable or that anything in Mrs. Maggio's testimony or elsewhere in the record created a reasonable doubt as to defendant's guilt.

■ Defendant finally contends that the court's finding of guilty and the sentence imposed were the results of passion and prejudice. He argues that the court excluded all evidence which might have established defendant's innocence. The instances during the trial complained of were rulings by the court sustaining proper objections of the State's Attorney. While defendant complains that the court made no effort to determine why counsel was making the inquiries or what their relevance may have been, we find no substance to this argument. ¡There is nothing in the record to show that the court was other than fair and impartial in conducting the trial or that the rulings complained of were improper. Defendant failed to show any prejudice on the part of the trial court during the course of the trial.

Defendant also points out statements of the court at the time sentence was imposed. The court found the State had sustained its burden and then stated in part:

"I wish that the legislature had made the punishment even more severe than it is under this statute because I would be impelled by my conscience and by my duty to impose a maximum sentence of any number of years that the statute would permit me to do.

"Now then, that being the case, from this evidence, beyond all reasonable doubt that this has happened, and we've got to take these fellows off the streets of this city or else we are going to run into this problem all the time, and with an alert citizenry

maybe we will get rid of some of these criminals that go after these little children, the little girls and little boys of our community, so they can live and be as God intended they should, there will be a finding of guilty in this case and the Court will impose a minimum sentence of two hundred and thirty-eight months, a maximum sentence of twenty years in the Illinois State Penitentiary, to be served at Menard. I will so direct in the pen letter. I will enter judgment on the finding first. Menard Penitentiary where we perhaps can take care of these people.

"I will further direct that one month out of each year, being the month of October, when this crime occurred, that he shall be confined to solitary confinement during that month of each year that he is there so that he can meditate on what he attempted to do this three-and-a-half-year-old boy. And maybe some day he may come out of the penitentiary and know that these crimes do not go unpunished and that his conscience should trouble him at least one month out of each year."

The State cites the case of People v. Matthews, 17 Ill2d 502, 162 NE2d 381, wherein it was stated at page 508:

"Finally defendant urges that the judgment of conviction should be reversed because the rulings and remarks of the trial judge reveal that the verdict and the sentence were the result of passion and prejudice. He insists that the rulings of the judge in regard to the proffered impeaching evidence, and the statements of the judge at the time of sentencing reveal his prejudicial attitude and his predetermination of the case. Upon sentencing defendant the trial judge remarked that it was regrettable that the statute limited the sentence to 20 years, and that in this type of case a man should be put away for life. He

413

then sentenced the defendant to a minimum of 19 years and a maximum of 20 years.

"Defendant points to nothing during the course of the trial which indicates passion or prejudice on the part of the court. The remarks to which defendant now takes exception were made only after the court had found the defendant guilty. The remarks do not mean that the court had entertained a preconceived attitude in regard to defendant's guilt, but only that the facts of the crime, as they came to light from the evidence presented, shocked and revolted the court.

"We can well understand the strong feelings of the court, but nothing appears to us to indicate that the court tried the case in any attitude other than one of impartiality and fairness. The actions of the court during the trial, and its pronouncements of judgment and sentence were proper, correct, and within the limits of the law. That the court expressed, after trial, a personal opinion clearly attributable to the evidence in the record, does not mean that the court was not an impartial trier of facts. People v. Brown, 392 Ill 519; People v. Tensley, 3 Ill2d 615."

We feel that the finding of guilty in the instant case is supported by the evidence and that it was reached in a fair and impartial manner by the court. However, the sentence imposed is not so clearly free from the implication of being the result of prejudice on the part of the court. There is a difference between a fair determination of guilt and a severe reaction to that finding of guilt. The penalty provided by statute for the offense of taking indecent liberties with a child is 1–20 years. (Ill Rev Stats 1959, c 38, par 109.) It is evident that the legislature saw and understood that the necessary penalty would vary with the circumstances of each case and

each defendant. There is no showing that this defendant had any prior criminal record and yet the court sentenced him to a term of 19 years, 10 months to 20 years, the month of October of each year to be spent in solitary confinement. The court also determined that defendant should be sent to the Menard branch of the penitentiary where medical attention and treatment is provided for people guilty of the commission of sex offenses. By sending defendant to Menard the court seemingly realized the need for treatment and yet by the minimum sentence the court in effect determined that defendant could not or would not be aided by that treatment so as to be able to return to his place in society in less than 19 years and 10 months.

We can well understand the strong feelings of the court and realize that this was a very serious offense. However, people who commit these crimes have medical treatment available to them at Menard and may well be rehabilitated so as to be able to return to a normal life without endangering society. Under the Parole Act the Parole and Pardon Board, who has closer contact with the prisoner, is in a better position to know when an offender has become sufficiently rehabilitated to be released from prison on parole. Furthermore, as was pointed out in People v. Lillie, 79 Ill App2d 174, at page 179, 223 NE2d 716:

> "Advances in the fields of psychology, psychiatry and sociology have contributed to a greater understanding of the motives underlying the commission of criminal offenses, and the techniques and methods which are of value in the rehabilitation of offenders. The hope of earlier release is a great incentive to a prisoner to participate in the educational and rehabilitation programs provided in modern penal institutions. Excessive minimum sentences, imposed by the courts, may defeat the effectiveness of the

parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished.

"Inherent in the parole system is the risk of recidivism, but an enlightened society has long since rejected the medieval concept of punishment which imposed the death penalty for crimes now categorized as petty offenses. Society's safeguard against recidivism is the power of the parole authorities to terminate the conditional release and return the offender to prison. A lengthy maximum sentence is not so likely to impede the operation of the system because the prisoner, although subject to parole supervision, is not mandatorily confined."

■ In view of the foregoing we feel the minimum sentence of 19 years, 10 months, to be excessive and not in the best interests of the community or the defendant. Similarly, as to the portion of the sentence requiring solitary confinement of defendant, the court had the power to provide for such confinement at the time of sentencing (Ill Rev Stats 1959, c 38, par 754a). However, such provision has since been repealed and we feel that portion of the sentence will in no way help in the rehabilitation of defendant. Accordingly the minimum sentence is reduced to 10 years. The judgment and sentence are modified to provide that the sentence is confinement of the defendant at the Menard branch of the Illinois State Penitentiary for a period of not less than 10 years nor more than 20 years. As so modified, the judgment is affirmed.

Judgment, as modified, affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.