THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ODELL BONDS, Defendant-Appellant.

(No. 55106;

First District—April 21, 1971.

Frederick F. Cohn, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and John A. Gibaitis, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Defendant, Odell Bonds, was found guilty of the misdemeanor of criminal damage to property after a trial without a jury. Defendant was sentenced to one year probation and brings this appeal. He contends (1) that the trial court erred in permitting the prosecutor to cross-examine a defense witness beyond the scope of direct examination on immaterial subjects and then to impeach the witness on those subjects and (2) that the evidence was insufficient to sustain his conviction.

The complaining witness, Mary Barnes, testified that she arrived at her home at 5540 S. Morgan in the City of Chicago at about 2:30 P.M. on November 1, 1968. She noticed the defendant, Odell Bonds, sitting on top of a car parked in front of her house. She went to her back door and noticed that her kitchen and den windows were open. She proceeded up the back porch, pulled the kitchen curtain back and noticed five or six boys in her house. She went around to the front of the house and saw Odell Bonds run out of the front door. The other boys ran out behind him. She grabbed Odell Bonds on the front lawn, but was unable to hold him as he squirmed out of his coat. Missing from her house were some light bulbs, a radio and $100.00.

Odell Bonds, a seventeen year old student at Tilden High School,

testified that on the date in question he left school at 1:30 P.M. and arrived home at 5748 South Morgan, a block and a half from the complaining witness's home, at 2:00 P.M. He helped his mother wash their car until 2:30 P.M. Between 2:00 P.M. and 2:30 P.M. he went to a store for a bottle of 7-Up for his mother. Afterwards he went to bed at 2:30 or 2:45 P.M. and slept until 7:00 or 8:00 P.M.

Mrs. Lucy Bonds, his mother, testified her son came home at about 2:00 P.M. and helped her wash the car. He brought a glass out of the house so that she could split a bottle of 7-Up with another lady. She did not testify that her son went to a store for the 7-Up. She testified that he slept from about 2:30 P.M. to 7:00 P.M. and that he could not have left the house without her seeing him.

Two other witnesses, one, a woman who lived in the same building where the defendant resided, and the other, a lady friend of the defendant's mother, testified they saw Odell Bonds drying the car just after 2:00 P.M. on the date in question.

The primary issue in this case is whether the cross-examination of defendant's mother was improper and whether such error is reversible. The allegedly improper cross-examination occurred as follows:

### "CROSS-EXAMINATION BY MR. TRUSCHKE:

Q. The defendant is your son, is that correct?

A. Yes.

Q. Do you love your son?

A. Sure, but I wouldn't lie for him.

Q. Well—

Mr. Ginsberg: We stipulate that—

Mr. Truschke: Q. You love your son, right?

A. Yes.

Q. You would do a lot for your son, wouldn't you?

A. I wouldn't lie for him.

Q. Take a look at this Police Officer standing over here. He came to your house on November 3rd, didn't he?

A. He came to my house November 2nd.

Q. On the 2nd, when he came to your house, isn't it a fact you said—

Mr. Ginsberg: Excuse me. This is beyond the scope of direct.

Mr. Truschke: Your honor, it is for impeachment.

The Court: Overruled.

Mr. Ginsberg: I am assuming it can be tied up. You may carry on.

Mr. Truschke: You stated at the—you stood at the top of the stairs and said, 'you're not taking my son anywhere.'

A. No.

Q. And isn't it a fact that you are lying right here today?

Mr. Ginsberg: Objection. Here 'here' is irrelevancy. There is no testimony regarding this incident.

Mr. Truschke: There is going to be testimony by the State in rebuttal. I think it is proper impeachment of a witness. She denied it. And I submit that she is lying here today for the sake of her son. And the evidence is that she drew a knife on the Police Officer, your Honor.

Mr. Ginsberg: No evidence, maybe argument, but no evidence. I think that the testimony counsel is trying to elicit is immaterial and irrelevant to the issues of the case. Her son is on trial here, she is not on trial here.

The Court: Objection, overruled."

Defendant further contends this error of the State was compounded by the rebuttal testimony of the police officer, Thomas Cunningham, who stated:

"A. As I was standing on the steps and the complainant standing behind me, and my partner in front of me, the defendant's father at the top of the steps, and the defendant and the mother, the mother had a butcher knife in her hand.

Q. How long would you say the butcher knife was?

A. Looked to me about eleven or twelve inches.

Q. What did she do?

A. Was waving it around.

Q. Did she say anything?

A. She did.

Q. What did she say?

A. Said 'My son is not going to leave here'."

■■ Defendant contends the trial court committed prejudicial error in permitting the prosecutor to cross-examine defendant's mother, an alibi witness, about a collateral matter. In general, any permissible kind of impeaching matter may be developed on cross-examination, since cross-examination has as one of its purposes the testing of the credibility of the witness.

In *People v. Somerville* (1967), 88 Ill.App.2d 212, 232 N.E.2d 115, the defendants contended the State improperly questioned Virginia Kullerstrand, the daughter of defendant Marjorie Kullerstrand. Virginia testified she lived with her mother and on cross-examination denied that co-defendant Donald Somerville had ever stayed overnight at their home. The State's Attorney then asked Virginia if she told Officer Walsh that Donald Somerville had stayed overnight at their house on numerous oc-

casions. Virginia said she did not remember what she had told Officer Walsh. On rebuttal Officer Walsh testified that Virginia told him that Donald Somerville had spent the night in her home with her mother on many occasions. This court upheld the cross-examination as being relevant and within the sound discretion of the trial court.

On the issue of bias of the daughter in favor of her mother, the court quoted from *People v. McGovern* (1923), 307 Ill. 373, 377, 138 N.E. 632:

"It is perfectly proper to inquire of a witness, in order to show his bias or prejudice, as to his relations with the accused and his interest in the result of the suit. (1 Wharton on Crim. Evidence-10th ed. sec. 477; Ross v. State, 71 Tex. Crim. 493.) It has been said that the feelings of bias and relationship of the witness are never collateral. (Underhill on Crim. Evidence- 2 ed. sec. 222.)"

In *People v. Goodrich* (1911), 251 Ill. 558, 562, alleged improper relations between the prosecuting witness, a female, and the accused, her male business agent, could not be brought out on cross-examination since such proof would not tend to show any motive on the part of the prosecuting witness to testify falsely against him. The Illinois Supreme Court pointed out though, that had her testimony been in his favor, such proof might have been admissible.

■■ In the instant case, we are concerned not only with the circumstance of the relationship, making it a *priori* probable that Lucy Bonds has some partiality of emotion for her son's cause, but also with the statements and conduct of Lucy Bonds herself, indicating the presence of such partiality, the inference here being from the expression of the feeling to the feeling itself. On cross-examination, Lucy Bonds testified that a policeman came to her house on November 2nd, but denied she told him "You're not taking my son anywhere". On rebuttal Officer Cunningham testified that Lucy Bonds did tell him that her son was not going to leave their house. We find the questions posed to Lucy Bonds probing her prior statements and her threatening conduct were proper impeachment on a relevant matter which cast doubt on the credibility of her alibi testimony. Such proof tends to show a motive on her part to testify falsely in favor of the defendant. *People v. Goodrich* (1911), 251 Ill. 558, 562.

■■ While we believe counsel for the State is subject to criticism as to some of his questions asked of Lucy Bonds we do not think prejudicial error was committed against the defendant. Illinois law in regard to cross-examination is clear:

"As a general rule the latitude to be allowed in cross-examination of a witness rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits,

and it is only in case of clear abuse of such discretion, resulting in manifest prejudice to the defendant that a reviewing court will interfere." *People v. Nugara* (1968), 39 Ill.2d 482, 488, 236 N.E.2d 693. There was no such "clear abuse of discretion resulting in manifest prejudice to the defendant" in this bench trial.

■■■ Defendant next contends that the evidence was insufficient to sustain his conviction. Mary Barnes, the complaining witness testified that she saw Odell Bonds sitting on top of the car, running out of her house, and getting away from her grasp on her front lawn. "The testimony of a single witness, if it is positive and the witness credible is sufficient to convict even though it is contradicted by the accused." *People v. Hampton* (1969), 44 Ill.2d 41, 253 N.E.2d 385.

We reject defendant's contentions and affirm the judgment of the Circuit Court of Cook County.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.