THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARDELL LEWIS, Defendant-Appellant.

(No. 58953;

First District (5th Division)—March 8, 1974.

Paul Bradley, Deputy Defender, of Chicago (Brenda Richey, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals from a conviction of attempted armed robbery after a jury trial and a sentence of not less than 2 nor more than 6 years in the penitentiary. Defendant contends (1) the court erred in improperly restricting the cross-examination of an identification witness; (2) the State failed to prove defendant guilty beyond a reasonable doubt; (3) the court erred in refusing to hold a hearing on a motion to suppress an in-court identification; and (4) the sentence was excessive.

The facts as testified to by the State's chief witness, Johnny Watson, are as follows: On October 27, 1972, at approximately 4:30 A.M., defendant and Henry Gregory entered a service station. Defendant approached Watson, an employee of the station, and requested change for a dollar bill. Meanwhile, Gregory waited near a vending machine inside the office with his back turned to defendant and Watson. After Watson removed a roll of money from his pocket in order to place the defendant's bill with it, defendant yelled to Gregory, "Get him" and immediately Gregory whirled and put a gun to Watson's head. Watson grabbed the gun and began struggling for control of it and, while the struggle continued, defendant struck him in the face and again on the back of the neck and head. As the struggle continued, all the parties fell to the floor together with defendant on Watson's back and the gun discharged. After the shot, defendant got up and ran for the door and Watson, then in possession of the gun, ordered him to stop. Defendant backed away from the door and Watson went outside and waved down an approaching patrol car.

Defendant denied participation in the robbery attempt and asserted that he entered the station seeking change for bus transportation and that a short time later Gregory entered the station and stood by a vending machine. Defendant denied saying, "Get him" to Gregory, and stated what he said to Watson was "Dig him", referring to Gregory, and that at that time Gregory turned around and placed the gun to Watson's head. Defendant testified that after a warning by Gregory, he turned to flee but turned back when he heard Watson call for help. Defendant admitted hitting Watson, but explained that it was done accidentally in his attempt to hit Gregory. Defendant testified that the gun discharged twice, hitting him in the arm and Gregory in the head. After the fight, defendant saw his money scattered on the floor, told Watson he was hit and to call the police. Watson went outside and with his back to the door signalled a police car. Defendant also testified to a speech deficiency from a broken jaw he received several months prior.

On rebuttal, Watson testified that he first saw defendant and Gregory

as they walked together towards the station; that he never asked defendant to help him in his struggle with Gregory and that the weapon was fired once. In reference to defendant's remark of, "Dig him", Watson testified that defendant spoke in a clear and concise fashion and said, "Get him".

David Sepulveda, one of the arresting officers, testified that on October 27, 1972, he and Officer Kulekowskis were driving in the vicinity of 31st and Indiana Avenue, and at approximately 5 A.M. they noticed Watson signalling outside the Butler Service Station. The officers entered the station and observed defendant, with his right arm bleeding, standing in front of a desk and Gregory, with a wound in his temple, lying on the floor. Sepulveda testified further that Watson gave his partner a .25 caliber automatic pistol.

The State's final witness, James Lynch, testified, after denials of defendant's separate motions to suppress an identification of defendant and for a hearing to test Lynch's ability to recollect and identify, that on October 24, 1972, he was robbed by two men and, among other things, a .25 caliber automatic pistol was taken. Lynch pointed out defendant as one of the persons involved in his robbery and also identified the weapon used in the instant case as the one taken from him. On cross-examination, Lynch testified that he never identified defendant at a lineup or through a photograph, but did see him at the preliminary hearing for the offense charged here.

On rebuttal, Lynch testified, over defendant's motions to strike his prior testimony and to exclude any testimony as to the Lynch robbery, that defendant was one of the men who robbed him.

OPINION

Defendant initially argues that in attempting to determine the basis of Lynch's identification of him, he was precluded from effectively cross-examining Lynch and thereby unable to test his ability to recollect and describe the perpetrators of the crime against him. The record discloses that when defendant became aware that Lynch was to be called as a witness, he moved to bar the use of any evidence of prior crimes. This motion was allowed and later, when Lynch took the stand, defendant's oral motion to suppress any identification of defendant was denied. Still later, during the direct examination of Lynch, defendant moved for a hearing out of the presence of the jury to test Lynch's ability to recollect and identify defendant, and the court stated:

> "I will deny that motion. You may cross-examine him and bring those matters out."

Lynch then testified that the gun used in the crime here was one of the weapons taken from him a few days earlier, and he pointed out defen-

dant as one of the men involved in his robbery. Lynch, in response to an inquiry as to whether defendant took his gun, answered, "I assume he [defendant] was one of the men that took the gun." He further answered, on cross-examination, that he never viewed a lineup nor did he present charges against or identify anybody in regard to his robbery. Lynch testified he was asked by the police to appear at the preliminary hearing and to view defendant there after having been told by the police that defendant was going to be charged with the offense in the instant case.

Defendant then testified that he was not involved in the attempted robbery and denied any participation in the Lynch robbery. He made the statement that Lynch testified at the preliminary hearing to the effect that defendant was not involved in his robbery, which brought Lynch back to the stand, in rebuttal, to deny having said at the preliminary hearing that defendant was not involved in his robbery, and he again identified defendant as one of the men who robbed him. Then, on his cross-examination, after noting that the State had "opened the door", the court stated defendant could question Lynch's identification. However, the court then sustained objections to a series of questions directed at Lynch concerning (1) the descriptions, if any, which were given to the police of the participants in his robbery; (2) whether Lynch had viewed any photographs of defendant or any other persons; and (3) the speech of the robbers.

■■ While cross-examination must always be held within reasonable limits, an accused has a right to question identifying witnesses concerning any matter which goes to explain, modify or discredit what has been stated in direct examination. (*People v. Morris*, 30 Ill.2d 406, 197 N.E.2d 433.) Here, we note that on his direct examination, Lynch, after pointing out defendant as being involved in his robbery, then testified that he assumed defendant was one of those who stole the gun. At this point, defendant's attorney did not test the identification by Lynch, apparently being satisfied that, as an assumption, it could be more effectively handled on argument to the jury. However, after Lynch testified on rebuttal that defendant was one of the men who robbed him, defendant's attorney attempted to question the identification but was prevented from doing so although the trial judge had on two prior occasions stated that defendant's attorney could cross-examine Lynch concerning his identification. In view thereof, and because of the significance of Lynch's testimony as more specifically set forth below, we believe that defendant's right to cross-examine concerning this identification was unduly restricted.

■■ Having reached this conclusion, we must now determine whether

this error was harmless or of such a nature as to require a reversal. In order to determine error to be harmless, we must believe, based upon the facts and circumstances disclosed in the record, that it was harmless beyond a reasonable doubt. (*Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824.) Here, defendant asserts he did not come to the gas station with Gregory and that he was assisting Watson. The only testimony, other than that of Watson, which involved defendant, is Lynch's identification. It not only associated defendant with the gun used by Gregory but also informed the jury that the defendant had been involved in a prior robbery and created the inference that he and Gregory were working together. There were many inconsistencies in the testimony of Watson and defendant and, in view thereof, it is conceivable that, absent the Lynch testimony, the jury might have accepted the version of defendant that he was assisting Watson rather than participating in the offense. In any event, the identification was an important factor in this case, and defendant was entitled to test the accuracy of it by questions concerning any matter which went to explain, modify or discredit it. *People v. Pelletri*, 323 Ill. 176, 153 N.E. 591.

■■ After reviewing the facts and circumstances here, we are unable to conclude beyond a reasonable doubt that the restriction of the cross-examination of Lynch could not have contributed to the conviction, and therefore the error cannot be said to be harmless. (*Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed.2d 171, 84 S.Ct. 229.) Accordingly, we are of the opinion that defendant should have a new trial.

Defendant also contends he was not proven guilty beyond a reasonable doubt. In his brief in support of this contention, he does not mention the Lynch testimony and points only to the inconsistencies in the testimony of Watson and defendant. He argues that because of this disparity, the facts are so unconvincing that the conviction should not stand. It is well established that the decision of the trial judge as to credibility of witnesses will not be disturbed unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt of guilt (*People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 378), and that the testimony of one witness, if positive and credible, is sufficient to sustain a conviction even though contradicted by the accused. *People v. Bonds*, 132 Ill.App.2d 827, 270 N.E.2d 575.

Here, the discrepancies in the testimony of defendant and Watson affected only their credibility, which is a matter for the trier of fact to determine. (*People v. Thomas*, 127 Ill.App.2d 444, 262 N.E.2d 495.) The jury, in addition to the apparent positive testimony of Watson, had the benefit of the identification testimony of Lynch, which, although

286

cross-examination was restricted, was properly considered in the determination of defendant's guilt beyond a reasonable doubt, and, from our review of the record, we cannot say this finding was erroneous.

In view of our conclusion that defendant is entitled to a new trial, it will not be necessary to discuss the remaining contentions of defendant.

For reasons stated, defendant's conviction is reversed and this cause is remanded for a new trial.

Reversed and remanded.

DRUCKER and LORENZ, JJ., concur.