THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE BROWN, Defendant-Appellant.

(No. 60113;

First District (3rd Division)—September 4, 1975.

James J. Doherty, Public Defender, of Chicago (Marilyn D. Israel and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Defendant, George Brown, was charged with the offense of unlawful use of weapons in violation of section 24—1(a)(10) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)). After a motion to suppress the evidence was denied, the cause proceeded to a bench trial after which defendant was found guilty as charged and fined $50 plus $40 for court costs.

The only issue raised by defendant in this appeal is whether his conviction was obtained in violation of his constitutional rights to be free from unlawful searches and seizures.

We affirm.

At approximately 10 in the evening of December 8, 1973, Officer Richard Oswald and his partner stopped defendant at 1618 South Homan Avenue in Chicago after observing defendant operating his motor vehicle without its State license plates properly displayed. It is undisputed that defendant had properly applied for his license plates and had his license applied for sticker on the windshield of his automobile. However, the testimony concerning the events which occurred after defendant was stopped conflicts significantly.

At the hearing on the motion to suppress, only two witnesses, Officer Richard Oswald and defendant George Brown, testified. Defendant indicated that after leaving work he dropped a coworker off at a hardware store, drove around the block from the hardware store where he parked and was then approached by Officer Oswald and his partner in an unmarked vehicle. At this point, defendant's testimony is somewhat confusing. On direct examination, defendant testified that Officer Oswald's

partner then approached him and asked whose car he was driving. After defendant produced a bill of sale, the officer searched defendant's car with a flashlight and found a gun. On cross-examination, defendant testified he got out of the car when the officer approached him and that the dome light in his car did not light up because the fuse had blown. In response to the court's questions, defendant stated that when the officers pulled up behind him, he got out of the car to ask what was wrong and closed the door behind him. Defendant stated that he talked to Officer Oswald's partner, not Officer Oswald, and that Officer Oswald had gone down the street to arrest defendant's coworker whom defendant had dropped off at the hardware store.

Officer Oswald, on the other hand, testified that after flagging down defendant's car, he stopped his own car and alighted therefrom. He then approached the driver's side of defendant's vehicle while his partner approached defendant's vehicle on the passenger side. After Officer Oswald asked defendant for his driver's license, defendant then got out of his car at which time the dome light in defendant's car went on. While the door to defendant's car was open and as defendant was standing in the doorway to his automobile between Officer Oswald and the front seat of defendant's automobile, Officer Oswald looked inside defendant's car and was able to see approximately 1 inch of the barrel of a gun protruding from underneath the front arm rest of defendant's car. Officer Oswald then arrested the defendant and he and his partner conducted a search of the automobile, using a flashlight to search the areas not illuminated by the dome light. Officer Oswald further testified that the gun was loaded and that two other bullets were found in defendant's pocket. Concluding his testimony, Officer Oswald stated that it was he that arrested defendant's coworker whom defendant had dropped off at the hardware store.

Defendant correctly states in his brief that the credibility of a witness is normally a matter for the trier of fact to determine (*United States v. McNutt* (7th Cir. 1954), 209 F.2d 150; *People v. Lewis* (1974), 18 Ill. App.3d 281, 309 N.E.2d 784), but that when the evidence is so improbable and contrary to human experience courts on appeal will not hesitate to reverse. *People v. Barfield* (1969), 113 Ill.App.2d 390, 251 N.E.2d 923; *People v. Davis* (1915), 269 Ill. 256, 110 N.E. 9.

Only two witnesses, Officer Oswald and defendant, testified at the hearing on the suppression of evidence, and their testimony conflicts in significant regard. Defendant testified that it was Officer Oswald's partner, not Officer Oswald, who approached defendant and that at that time the dome light in defendant's car was not on, that in fact it was not functioning because it had blown a fuse. Officer Oswald testified that

it was he himself who approached the defendant and that at that time the dome light in defendant's car was on.

Defendant contends that Officer Oswald's testimony was so improbable and contrary to human experience as to be unworthy of belief. Defendant first argues that, assuming that it was Officer Oswald and not his partner that approached defendant's vehicle and that the dome light in defendant's vehicle was on, it was impossible for Officer Oswald to have seen the protruding 1 inch of the gun barrel because defendant was standing between Officer Oswald and defendant's car. This specific point was considered and rejected by the trial court. Although the record does indicate that the defendant was between Officer Oswald and the automobile, there is nothing in the record denoting that Officer Oswald could not see the front seat of defendant's car. There is nothing unbelievable about this aspect of Officer Oswald's testimony.

Defendant next argues that it was not Officer Oswald, but Officer Oswald's partner who approached defendant and that to accept Officer Oswald's version, we would have to believe that Officer Oswald not only arrested defendant but went around the corner and arrested defendant's companion while his partner did virtually nothing. Defendant contends that this is too contrary to human experience to be worthy of belief. We disagree. There is nothing so improbable about Officer Oswald's both arresting defendant's coworker and conducting the search of defendant's vehicle that would make his testimony unworthy of belief. In the instant case the credibility of the witnesses' testimony was properly a matter for the trial court and the trial court believed Officer Oswald.

■■ In the instant case, the arresting officer saw the barrel of a gun protruding from under the front arm rest of defendant's automobile. Under the "plain view" doctrine, the search of defendant's car was not unlawful or unreasonable. As stated in *People v. Wright* (1968), 41 Ill. 2d 170, 173-74, 242 N.E.2d 180, 183:

> "* * * It is well established that a search without a warrant is reasonable and valid if it is incident to a lawful arrest and there is no requirement that the arrest be under the authority of an arrest warrant. (*Ker v. California*, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726.) In turn, the validity of an arrest without a warrant depends upon whether the officers had reasonable cause to believe that an offense had been committed and that the defendant had committed it. (*People v. Jones*, 16 Ill.2d 569, 573.) The test is not whether there is sufficient evidence to convict the arrested person, but probable cause exists for arrest where a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed

the offense. (*People v. Hightower*, 20 Ill.2d 361, 363.) In deciding the question in a particular case, courts deal with probabilities and are not disposed to be unduly technical. (*People v. Fiorito*, 19 Ill. 2d 246, 256.)' *People v. Jones*, 31 Ill.2d 240, 243-4.

In *Davis v. United States* (9th Cir.), 327 F.2d 301, 305, the rule is stated that '"It is well established that it is not a search to observe what is open and patent either in daylight or in artificial light. [citations]" ＊ ＊ ＊.'"

Considering the fact that Officer Oswald saw the gun barrel in "plain view," we conclude that under the standard in *Wright* the search was reasonable and incidental to a valid arrest, and that the evidence seized was properly admitted into evidence. Accordingly, we affirm the judgment of the circuit court.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.