**People of the State of Illinois, Plaintiff-Appellee, v. Kenneth Fred Davis, Defendant-Appellant.**

Gen. No. 51,078.

First District, First Division.

April 10, 1967.

Norman Nelson, Jr., of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward J. Downs, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Kenneth Fred Davis, was indicted and tried for murder before a jury. Three forms of verdict were submitted to the jury, (1) a guilty verdict in manner and form as charged in the indictment; (2) a finding of not guilty; and (3) a finding of guilty of manslaughter. The jury found the defendant guilty of manslaughter and the other two verdicts were returned unused and unexecuted. The court sentenced the defendant to the Illinois State Penitentiary for the crime of manslaughter for a term of ten to twenty years.

The principal assignment of error raised by the defendant is that there is no statutory crime of "manslaughter" in Illinois making the verdict void and a nullity. Also since the verdict does not designate either "voluntary manslaughter" or "involuntary manslaughter," the trial court did not have authority to impose the maximum sentence of more than a ten-year term on the defendant.

The two-count indictment in this case charged the defendant only with murder without mention of either voluntary manslaughter or involuntary manslaughter. The defendant states that while the Illinois Criminal Code sets out and defines "voluntary manslaughter" and "involuntary manslaughter," nowhere does the code designate or define the word "manslaughter," nor does it make it punishable. Therefore, the defendant argues, there is no crime of manslaughter because, "[a]ll felonies in Illinois are defined by and required to be prosecuted under the Criminal Code, and every indictment for felony in Illinois is required to be construed in accordance with this code." People v. Corder, 306 Ill 264, 272, 137 NE 845.

██ However, it is well established in Illinois that the crime of manslaughter is embraced in the charge of murder, and that one who is indicted for murder may, upon that indictment, be convicted of manslaughter if the evidence authorizes it. People v. Beil, 322 Ill 434,

153 NE 639; People v. Johnson, 54 Ill App2d 27, 203 NE2d 283.

██ ██ Defendant further claims that, "[i]t was required by this jury to return a specific verdict setting out particularly what criminal offense defendant was being found guilty of so the court could be informed as to what punishment to mete out." It is well settled that verdicts are not to be construed as strictly as indictment, but rather are to be liberally construed and all reasonable intendments indulged in their support. People v. Pignatelli, 405 Ill 302, 90 NE2d 761. In determining the meaning of a verdict, the entire record will be searched, and all parts of the record interpreted together. People v. Quesse, 310 Ill 467, 142 NE 187.

The defendant contended at the trial that he killed the deceased in self-defense. He testified that on Sunday evening, March 21, 1965, he drove to a Pizza Parlor at 4409 West Fullerton Avenue. When he opened the door he said a gang of boys attacked him. He stopped one boy from hitting him with a coke bottle and another boy hit him on the head with his fists. He didn't know any of the boys and when he started to leave the deceased threatened to kill him if he was "Tex" who was messing around with his girl, and when he showed him his identification card to prove he wasn't "Tex" the deceased apologized, they shook hands, and he left the store. He testified further that he had some beer to cool off and twenty minutes later he returned to the Pizza place to straighten the matter out and avoid trouble. Upon his return, about 8:45 p. m., he and the deceased again got into an argument and a scuffle and he was threatened by the other boys, and he and the deceased went outside the store to settle the dispute. He said when he started to close the door five or six boys came out so he pulled out a gun from his belt and told them to stay inside and no one will get hurt. He testified further, when the boys came out again while

he and the deceased were talking, he fired one shot in the air to scare them. He said they circled him and when one of the boys said "it's a blank, let's kill the son of a bitch" he was afraid for his life and fired about six shots at the crowd of boys, but at no one in particular. Herschel Boardman with whom he quarreled was killed and two of the other boys were wounded.

On the State's side the evidence reveals that Kenneth Fleischer who was wounded and Emil Schmidt who was shot twice, testified that they did not know the defendant. When he came in the Pizza Parlor the first time they were sitting separately in a booth and from a short distance away heard him argue with the deceased. They testified that no violence took place and the defendant was not threatened or attacked by anyone. Schmidt testified that the defendant and the deceased were arguing and the latter "grabbed him and asked him if his name was Tex and he said no." He said after the deceased apologized to the defendant, the latter left the premises and he went out and told him that the deceased was sorry for pushing him and the defendant replied "well, you go back in there and tell Pete [deceased] I will be back in thirty minutes with the Cobras." He said nobody took this threat seriously. Both witnesses testified that the defendant came back in about twenty minutes and he and the deceased argued again and they went outside alone at the suggestion of the victim. They said many patrons gathered at the front store window and some one shouted that the defendant had pulled out a gun. Fleischer said he opened the door and the defendant said "don't come out or I'll shoot," but he started out and the defendant started shooting. He was wounded and went back in the store and he saw people bring the deceased back in the restaurant. Schmidt testified that Fleischer opened the door and tried to get the defendant to put his gun away. He said when the shooting started he ran outside, he noticed that Fleischer ap-

286

peared to be shot and then the defendant shot him twice. Both witnesses testified that neither the deceased nor they had any weapons.

Among the instructions given to the jury was one on self-defense submitted by the defendant. State's instruction No. 4 defining voluntary manslaughter was the only instruction given on manslaughter.

 The evidence in this case only supports a finding of voluntary manslaughter. The defendant testified he shot the decedent in self-defense. The offense of voluntary manslaughter is established where a person intentionally or knowingly kills another, when at the time of the killing he believed the circumstances to be such, that, if they existed, his conduct would be justified under the law of self-defense, but his belief and conduct is unreasonable. Ill Rev Stats 1965, c 38, § 9–2(b). Self-defense presupposes the intentional use of force in defense of one's person, and as such no conviction of involuntary manslaughter would be justified when a killing occurs in self-defense. People v. Johnson, 54 Ill App2d 27, 203 NE2d 283. The record is also clear that the defendant offered no instruction on involuntary manslaughter. He did not object when the voluntary manslaughter instruction was given or when the verdict was read nor when he made a post-trial motion. The jury correctly found the defendant guilty of manslaughter, a lesser included offense in the charge of murder.

People v. Brown, 383 Ill 287, 48 NE2d 953; People v. Swinson, 406 Ill 233, 92 NE2d 758 and People v. Ellis, 309 Ill 51, 139 NE 902, are cited for authority that the court erred in not sentencing the defendant for involuntary manslaughter. In Brown the indictment was insufficient to charge the offense of which the defendant was found guilty, but was sufficient to charge another form of larceny. This is distinguishable from the instant case where, in the indictment charging murder, the jury may return a verdict of manslaughter. The

intention of the jury to find the defendant guilty of voluntary manslaughter is clearly shown by the evidence and by the instructions of the court and is distinguishable from Swinson and Ellis where the verdicts failed to find a material statutory element. The sentence imposed by the court was in our judgment directly responsive to that finding.

For the reasons given the judgment of the criminal division of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.