THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLEN SULTON, Defendant-Appellant.

(No. 53214;

First District—December 7, 1970.

Gerald W. Getty, Public Defender, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Roger S. Matelski, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The defendant, Allen Sulton, was indicted for the murder of Willie J. Riley. He was tried before a jury and found guilty of manslaughter. He was sentenced to serve not less than seven nor more than ten years in the Illinois State Penitentiary.

The defendant contends, on appeal, (1) that it was error to submit an instruction to the jury defining voluntary manslaughter because no evidence was introduced sufficient to support a verdict finding the defendant guilty of that crime, (2) that the verdict returned by the jury was defective and insufficient because it specified only that he was guilty of "manslaughter", (3) that the State knowingly permitted false testimony to remain uncorrected, (4) that he was unable to adequately prepare his defense because the State withheld its list of witnesses until the day of trial, (5) that he was represented by incompetent counsel, and (6) that he was not proven guilty beyond a reasonable doubt.

■■ We first consider the defendant's contention that no evidence was introduced at trial sufficient to support a verdict finding him guilty of voluntary manslaughter. Murder and manslaughter are kindred crimes. *People v. Gajda*, 87 Ill.App.2d 316, 232 N.E.2d 49; the unlawful killing of a human being is the major factor which characterizes both crimes. (*United States v. Wiltberger*, 5 Wheat. 76, 18 U.S. 76.) Section 9—2 of

the Criminal Code of 1961 (Ill. Rev. Stat. 1965, ch. 38, par. 9—2) defines voluntary manslaughter and provides:

"9-2. § 9-2. Voluntary Manslaughter.] (a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

Where there is any evidence in the record which, if believed by the jury, would reduce a charge of murder to manslaughter, an instruction defining that crime should be given. *People v. Harris,* 8 Ill.2d 431, 134 N.E.2d 315; but where the evidence admits of but one of two conclusions, either that the defendant is guilty of murder or is innocent, the giving of an instruction and form verdict on manslaughter is improper. *People v. Newman,* 360 Ill. 226, 195 N.E. 645.

Initially we must point out that the instruction submitted to the jury dealing with voluntary manslaughter was tendered by the defendant. We have reviewed the entire record and conclude that there was sufficient evidence upon which the jury could find the defendant guilty of voluntary manslaughter.

■■ The evidence reveals that the defendant had given the deceased, Willie Riley, a home in his apartment and that various items belonging to him had been burglarized. James O'Toole, a detective with the Chicago Police Department, testified that the defendant informed him that Willie Riley had committed the burglary and that the defendant had notified the police on two separate occasions of unsuccessful attempts to apprehend Riley. On one of those occasions, according to Stanford Jones, Riley admitted to the defendant that he was the perpetrator of the crime and that the stolen articles were at his brother's home. At approximately 9:45 P.M. on December 18, 1966, Willie Riley was shot and killed. The jury found the defendant guilty of the homicide. The jury could have found from these facts that the killing resulted from a sudden, violent, and irresistible passion which overcame the defendant upon apprehending Riley, the ungrateful guest and admitted

burglar. Since there was some evidence which could sustain a verdict finding the defendant guilty of voluntary manslaughter, it was proper to submit an instruction on voluntary manslaughter to the jury.

In *People v. Hunter*, 365 Ill. 618, 7 N.E.2d 444, *People v. Newman*, 360 Ill. 226, 195 N.E. 645, and *People v. McMurry*, 64 Ill.App.2d 248, 212 N.E.2d 7 cited by the defendant, there was no evidence that the defendants were acting under intense passion caused by the provocation contemplated by the statute. These cases are, therefore, inapplicable on their facts.

■■ The defendant next contends that the verdict returned by the jury was defective and insufficient because it found him guilty of a non-existent crime. The Criminal Code of 1961, defines the crimes of voluntary manslaughter and involuntary manslaughter (Ill. Rev. Stat. 1965, ch. 38 par. 9—2 and 9—3), but it does not define the crime of "manslaughter" the crime of which defendant was convicted. The test of the sufficiency of a verdict is whether the jury's intention can be ascertained with reasonable certainty from the language used. (*People v. Orlando*, 380 Ill. 107, 43 N.E.2d 677.) In the case at bar, the defendant was indicted for murder. The charge of voluntary manslaughter is embraced in the charge of murder; one who is indicted for murder may be convicted upon that indictment of voluntary manslaughter. (*People v. Davis*, 82 Ill.App.2d 282, 226 N.E.2d 688.) The defendant submitted and the Court gave an instruction defining voluntary manslaughter which was the only instruction given to the jury relating to manslaughter. There is ample evidence indicating that the defendant committed voluntary manslaughter, but there is no evidence that he committed involuntary manslaughter. It is clear that the jury based its verdict upon the evidence and instructions and returned the verdict on the only suitable form submitted.

■■ The defendant next contends, that the State knowingly permitted false testimony to remain uncorrected. Stanford Jones, a witness for the State, who had been indicted on three charges of forgery and awaiting trial, testified that he was not offered any leniency or other consideration in return for his testimony. At the defendant's sentencing it was brought out that the three forgery indictments against Jones had been reduced to charges of theft and that Jones had pleaded guilty and received a sentence of ninety days, considered served. The defendant argues that the plea entered by Jones and the light sentence which he received refute his testimony that he was not offered leniency and indicates that the State knowingly permitted him to testify falsely. This bare assertion without any proof is insufficient to sustain the charge that Jones lied or that the State permitted his false testimony to stand uncorrected.

■■ The defendant further contends that he was deprived of due process because the State did not provide him with a list of witnesses until the day before the trial. The defendant's attorney on February 21, 1967, requested a list of witnesses from the State. On April 10, 1967, the day the cause was set for trial before Judge James Crosson, the State tendered to the defendant's attorney the list and moved for leave to file it with the Court. The defendant's attorney objected to the late tender of the witness list. The Assistant State's Attorney apologized for the inadvertent delay, expressed a willingness to have the matter continued on the motion of the State until the defendant's attorney had an opportunity to study the witness list, and offered the defendant's attorney any assistance necessary to contact the witnesses. The cause was then transferred to the Chief Justice, reassigned, and set for trial on the next day. When the case was called on April 11, 1967, before Judge Archibald Carey, Jr., the parties answered that they were ready for trial and proceeded. There is no evidence in the record which indicates that either the defendant or his attorney objected to the commencement of the trial on the grounds that they were surprised by the identities of those who were expected to be called as witnesses or that they were prejudiced in the preparation of their defense by the late tender of the witness list. (See *People v. Milani,* 39 Ill.2d 22 at 30, 233 N.E.2d 398 at 403.) No request was made for a continuance. On the state of this record it is presumed that when the defendant and his attorney answered ready to proceed to trial, they were ready and were demanding an immediate trial. (*People v. Jones,* 9 Ill.2d 481, 138 N.E.2d 522.) In the absence of a showing in the record that the defendant either requested or was refused additional time in which to prepare his case, a reviewing court will not remand for new trial on the ground that the defendant did not have adequate opportunity to prepare his defense. *People v. Coleman,* 45 Ill.2d 466, 259 N.E.2d 269.

■■■ Complaint is next made that the defendant was prejudiced and denied a fair trial because he was represented by incompetent and ineffective counsel. We find no merit to this contention. When, as in this case, a defendant is represented by counsel of his own choice, an allegation of incompetence of counsel presents a constitutional question only if the representation reduces the court proceedings to a farce or sham or was of such a low caliber as to amount to no representation at all. (*People v. Bliss,* 44 Ill.2d 363, 255 N.E.2d 405.) We have examined the acts and omissions of counsel which allegedly show his incompetence and conclude that if any errors of judgment were made, they do not amount to incompetence of counsel. (*People v. Washington,* 41 Ill.2d 16, 241 N.E.2d 425.) We hold that the representation by defense counsel

was not of such a low caliber as to amount to incompetence. To the contrary, we believe that the defendant was skillfully represented by an able counsel who was most successful in convincing the jury that the killing of the deceased was occasioned by a sudden and intense passion on the part of the defendant which was provoked by the acts of the deceased.

Finally, it is contended that the State failed to prove the defendant guilty beyond all reasonable doubt. The defendant states that the reviewing court must examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise serious doubt of the defendant's guilt, the conviction must be reversed. (*People v. Coulson*, 13 Ill.2d 290, 149 N.E.2d 96.) We have examined the record with this principle in mind, together with the corollary rules that a defendant in a criminal prosecution is presumed innocent until proven guilty, and that the State has the burden of establishing the defendant's guilt beyond all reasonable doubt. It is principally argued (1) that the sum total of the evidence of the three identification witnesses amounts to no valid identification of the defendant as the perpetrator of the crime and (2) that the testimony of the State's witness, Stanford Jones, is not credible. We are not in accord.

The evidence reveals that Willie Riley was shot and killed on December 18, 1966, at 9:45 P.M. in the 5000 block of West Adams Street. Lillian Owens, who resided at 5002 West Adams Street, testified that after she heard a gun shot, she raised her window and observed a man lying down on the ground. She saw another man run down the street and then disappear into a gangway between two houses. The man who was running was about six feet tall and weighed approximately 170 pounds. He was wearing a dark three-quarter length coat, dark trousers and a black hat. Charles Wyslingeter, who also lived at 5002 West Adams Street, testified that after he heard what he thought was a backfire, he looked out and saw a man lying in the street and another man walking west on Adams Street. The man who was walking away was about six feet tall and was wearing a dark three-quarter length leather coat and a dark hat. Wyslingeter then went to the street, saw the deceased, and waited to give a statement to the police.

Lee Welkley, a minister who resided at 4926 West Adams Street, testified that at about 9:45 P.M. on the day in question he was driving west on Adams Street in the vicinity of the 4900 block. He stopped at a stop sign and noticed two men behind a car across the intersection from him. He proceeded across the intersection to a point about six feet from the men where he saw a man on his knees trying to hail him for help,

and another man beside him. He had a good look at this man. The intersection was lighted and he had an opportunity to view the other man's face and clothing. The other man, he said, was wearing a black leather three-quarter length jacket and a dark hat. The minister parked his car nearby and as he started to walk toward the intersection, he heard a shot. At the intersection, he found the man who had been on his knees lying in the street bleeding. He observed the other man walk west on Adams and disappear between two buildings.

At a police station, on the day after the crime, he saw the defendant who he said was dressed "the same as the man I saw the night before." He stated there that the defendant looked exactly like the man he had seen at the intersection. At the trial, when he was asked if he saw the man whom he had seen at the intersection on the night of the killing, he answered, "I see the man who looks exactly like the man," indicating the defendant. On cross-examination defense counsel sought to have the Reverend answer "yes" or "no" as to whether the defendant was the man he saw, but he persisted in answering, "He looks exactly like the man." After many such attempts, the Court ruled that the witness had answered the question.

■■ In the defendant's reply brief we are informed that no question is raised as to the credibility of the Reverend, but the defense questions whether his identification is positive since "he refused to state unequivocally that the defendant was the assailant." We believe that the Reverend Welkley positively identified the defendant as the perpetrator of the crime. He chose to state that the defendant looked exactly like the man instead of answering "yes" he was the man. When the Reverend saw the defendant at the police station on the day after the killing, he stated that the defendant's clothes were identical to the clothing the killer wore. This testimony was corroborated by the other identification witnesses. The Reverend also identified the defendant as to height and weight. We believe that the method and manner of the identification is a matter which goes to the weight of the identification evidence. (*People v. Tunstall*, 17 Ill.2d 160, 161 N.E.2d 300.) We cannot say, after a careful review of all the evidence, that the sufficiency of the identification is contrary to the weight of the evidence or is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Keagle*, 7 Ill.2d 408, 131 N.E.2d 74; *People v. Ortega*, 5 Ill.2d 79, 125 N.E.2d 481.

It is also argued that the testimony of Stanford Jones is not credible. We summarize his testimony. Jones was an inmate at the Cook County Jail at the time when the defendant was first incarcerated there on the murder charge. He had various special duties at the jail, including

reading mass along with the congregation, typing bulletins, and acting as a sort of "jail house lawyer" by typing motions for inmates. In 1956 he was convicted of larceny, in 1961 of petty larceny and 1965 of forgery. He had been indicted and was awaiting trial on three charges of forgery. He testified that on December 19, 1966, the defendant made a statement in the nature of a confession to him. The defendant stated that he had apprehended Riley, who admitted burglarizing his apartment, but Riley broke loose and escaped. He next saw Riley at Lake Street and Homan Avenue, where he shot him. He then pushed Riley into his automobile and attempted to get his girl friend who was a nurse to remove the bullet. Riley tried to escape, and during a struggle he shot him in the head. He then disposed of the gun by throwing it onto the roof of a school. Jones testified that he had written the defendant on January 4, 1967, and offered his assistance in permanently disposing of the gun. The defendant replied to this letter and indicated he had taken care of things. The letter from the defendant was received in evidence.

On cross-examination, it was brought out that the defendant was not in the Cook County Jail on December 19, 1966, the time when Jones testified that his first conversation with the defendant had occurred. The defendant was not incarcerated until December 20, 1966. Jones testified that he had written to the defendant on January 4, 1967. When he was confronted with the fact that on January 4, 1967, the defendant was still incarcerated at the jail, he changed his testimony concerning the date on which he had mailed the letter to the defendant.

■■ A conviction of a felony will not disqualify a witness in a criminal case, but such conviction will affect the weight given to his testimony. (Ill. Rev. Stat. 1965, ch. 38, par. 155—1.) The jury was properly instructed to this effect. The discrepancies in the testimony of Jones are understandable since they relate to events that transpired some months prior to trial. It is fundamental that minor discrepancies as to non material factual events do not necessarily vitiate the credibility of a witness's testimony, but only affect the weight to be given to the testimony. *People v. Robinson,* 30 Ill.2d 437, 197 N.E.2d 45; *People v. Clay,* 27 Ill.2d 27, 187 N.E.2d 719.

■■ The function of the jury is to hear evidence, to weigh the testimony and to resolve conflicts in the evidence. The verdict of a jury will not be disturbed unless it is clearly contrary to the weight of the evidence or is so unsatisfactory as to cause a reasonable doubt of guilt. *People v. Tribbett,* 41 Ill.2d 267, 242 N.E.2d 249; *People v. Peto,* 38 Ill.2d 45, 230 N.E.2d 236.

The verdict of the jury was supported by the evidence and was not so unsatisfactory as to cause a reasonable doubt of guilt.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY and ADESKO, JJ., concur.