THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY LEE DAILEY, Defendant-Appellant.

(No. 11652;

Fourth District—November 7, 1973.

CRAVEN, P. J., concurring in part and dissenting in part.

John F. McNichols, Deputy Defender, of Springfield, (J. Daniel Stewart, Assistant Appellate Defender, of counsel,) for appellant.

C. Joseph Cavanaugh, State's Attorney, of Springfield, (David Eckberg, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

The defendant appeals from a sentence imposed on a jury verdict finding the defendant guilty of burglary and from a sentence imposed of 4 to 7 years in the penitentiary. We affirm the conviction and reduce the sentence.

In this court, the defendant contends (1) that identification of the defendant was insufficient to establish guilt beyond a reasonable doubt; (2) tests seeking to establish the origin of glass particles found on the defendant's sweat shirt were inconclusive and should not have been admitted into evidence; (3) he was prejudiced by an amendment of the list of witnesses made on the first day of the trial to include an expert witness on glass; (4) the admission of a 1969 conviction of the defendant for burglary was erroneously admitted; and (5) defendant's sentence is excessive.

The victims of the burglary and their four children were returning from a family outing. They noted a car parked in front of their house, and it was stipulated that this was the defendant's automobile. They drove into their driveway and the wife got out of the car and opened the overhead garage doors. As she walked into the garage, which was attached to the house, she noticed that the rear door of the garage was open. She walked to it, closed and locked it. It was a wooden door with

8 panes of glass in the middle. The nine-year-old son entered the house first and made some noise. There was a 75-watt bulb lighted inside the house in the area of the door. The chain lock on the door had been broken. As the wife entered the house, she saw a man with a hooded blue sweat shirt coming down the hall towards her. He was about 17 feet away from her and proceeded past her. The man ran towards the rear door of the garage, found it locked, broke the 4 center sections of glass, pulled the wooden frame out, and escaped. The husband chased him, lost sight of him and then returned to his house to get his pistol. As he again left the house, he observed the defendant in a blue hooded sweat shirt walking towards the car which was parked in front of the house. The husband detained the defendant until the police arrived. The wife positively identified the defendant at the trial. When the police checked the home, they went to the master bedroom where a lock box, which had been kept in a closet, was on the bed and papers were strewn about. A simulated wood-grain flashlight with an unusual appearance was found on the floor in the garage. The victims had not seen it before—the defendant and his wife both testified that they had owned one like it.

The defendant testified that his car heated up and he had stopped in front of the victims' home because his car stalled, and that he locked the car with his child inside and went to a nearby service station. The mechanic from that service station testified that the defendant had had trouble with his thermostat and they had worked on it sometime previously. The defendant and his wife both testified that the glass on his sweat shirt at the time he was arrested might have come from a broken glass in his front door which had been broken while he was carrying groceries into his house a few days before.

Three different samples of glass were tested. The first was made of samples of glass that had fallen on the floor in the garage, and these tests showed that the glass from the garage door was different from the glass on the sweat shirt. On the day before the trial, the victim brought some more glass from the garage door to the State's attorney, and the second test resulted in testimony that there was a high probability that the sample from the glass on the sweat shirt and the sample brought in at that time were part and parcel of the same piece of glass. Four different panes were brought in for the second test—two were from panes broken by the burglar and two were not. They were unmarked.

During arguments on the defendant's post-trial motion, the defendant presented the results of the third test. In this test glass from the defendant's sweat shirt was compared to broken glass which came from the defendant's home. The result of this test was that the glass fragments

from the sweat shirt could not have originated from the immediate area of the glass taken from the defendant's storm door. The defendant contends that these tests were inconsistent and therefore threw grave doubt on the validity of the tests performed by the expert witness. However, these conclusions are truly not inconsistent, because as the trial judge noted there might have been glass on the defendant's sweat shirt from both the defendant's broken storm door and from the victims' garage door. The expert's testimony was that two samples of the glass had the same refractive indices and densities as did the matching samples and came from the same source. The defendant sought to keep this testimony out on the basis that it was irrelevant and that the tests came too late in the trial and thus were unfair to the defendant.

■■ The defendant had relied on the first test indicating no connection between the broken glass and the glass on the defendant's sweat shirt. The defense contended that this all came as a surprise and that the results of the new tests were inadmissible. The trial court stated that the defense attorney could have whatever time he needed for examination and suggested anywhere from 3 days to a week. The defendant suggested that the trial proceed with no mention of the new tests. This colloquy took place at the time the State's attorney asked to list the additional witnesses he intended to use at the trial. The reports on the second test were made available to the defendant and thereafter the expert witness was questioned outside the presence of the jury in order to establish a proper chain of evidence. The defendant contends in his brief that he was summarily denied a continuance to prepare an adequate defense. This statement lacks support in the record. He was offered a fair opportunity to continue the case for a few days and to examine and check out the results of the second test. He made no motion himself for a continuance on that ground and stated that he didn't want to delay with the case any longer. There appears to be no error in this record in admitting the results of the tests. In the absence of a showing in the record that the defendant either requested or was refused additional time in which to prepare his case, a reviewing court will not remand for a new trial on the grounds that the defendant did not have an adequate opportunity to prepare his defense. (*People v. Sulton*, 130 Ill.App.2d 1098, 266 N.E. 2d 351.) In the case at bar, the defendant did not accept the continuance offered by the court.

■■ The defense moved that the court preclude the State's attorney from impeaching the defendant with a record of the defendant's March 17, 1969, conviction and sentence on a plea of guilty to burglary. The court denied the motion stating that burglary is a crime which is ob-

tained from a trait of dishonesty and he would let it in, that is, if the attorney could prove it up. The defendant took the stand and testified on direct examination to the prior conviction, that he was sentenced to a term of 1 to 3 years in the penitentiary, and that at the time of the commission of the present trial he was on parole. This testimony was clearly admissible under the principles laid down in *People v. Montgomery*, 47 Ill.2d 510, 268 N.E.2d 695; *People v. Jackson*, 132 Ill.App.2d 464, 270 N.E.2d 498; *People v. Petty*, 3 Ill.App.3d 951, 279 N.E.2d 509. While there may be those who would suggest that a conviction for burglary does not reflect adversely on the honesty and veracity of a defendant, it can at least be said that he does not come well recommended.

■■ The wife (victim) made a positive identification of the defendant during the trial, but likewise testified that when she viewed the defendant in front of her house after he had been apprehended, she had stated that the defendant looked like the same man. Cases cited by the defendant are readily distinguishable from the facts in this case. In addition to the identification testimony, there is corroborating evidence of the unusual flashlight found in the garage after the burglary which looked like a flashlight owned by the defendant, evidence as to the glass on the defendant's sweat shirt, the defendant's apprehension at his parked car in front of the burglarized home, and the fact that the man leaving the house wore a hooded blue sweat shirt. The man chased by the husband wore a similar sweat shirt and the defendant was wearing such a blue hooded sweat shirt when he walked towards his car in front of the house. Thus the issue of identification is a jury question and there is no sound basis for its disturbance.

■ Under section 19—1 of the new Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 19—1), burglary is a Class 2 felony and if the trial court sets the minimum term for a Class 2 felony of over 1 year, such minimum shall not be greater than one third of the maximum set by the court. Under section 8—2—4 of the Code (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4), the punishment is determined by the Code if an appeal was pending on January 1, 1973, the effective date of the new Unified Code of Corrections. (*People v. Bailey*, 1 Ill.App.3d 161, 273 N.E.2d 74.) The sentence imposed of 4 to 7 years is therefore excessive as to the minimum and shall be reduced to 2 years and 4 months. The sentence imposed likewise was to run consecutive to the previous sentence of 1 to 3 years. There is nothing in this record to warrant a change in the consecutive nature of the sentence.

Accordingly, the defendant's conviction shall be affirmed, the consecutive nature of the sentence is affirmed, and the minimum sentence is modified to 2 years and 4 months. The cause is remanded to the trial

court with directions to modify the *mittimus* in this cause by reducing the minimum sentence to 2 years and 4 months.

Conviction affirmed; sentence modified; modified *mittimus* ordered.

TRAPP, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN concurring in part and dissenting in part:

I concur in the opinion of the majority affirming the conviction.

I am not in agreement that the consecutive sentence should be affirmed, nor do I agree that this court should treat the statutory provisions of the Unified Code of Corrections as merely commanding a mathematical reduction of the sentence in this court. .

The Unified Code of Corrections is applicable to cases pending upon direct appeal. (*People v. Lobb*, 9 Ill.App.3d 650, 292 N.E.2d 750; *People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1.) As noted in the principal opinion, burglary is a Class 2 felony and the sentence for a Class 2 felony under the new Code of Corrections is a maximum term which shall be any term in excess of 1 year, not exceeding 20 years. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1.) The Code further provides, however, that the minimum term shall be 1 year unless the court having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term which shall not be greater than one-third the maximum term set in that case by the court. In the case now under review, the trial court fixed a term of not less than 4 nor more than 7 years in the penitentiary. For reasons that appear to me to be totally insufficient, that term was made to be consecutive with a prior sentence imposed upon the defendant of 1 to 3 years for another offense.

This court, the supreme court, and, indeed every appellate court in the State, have repeatedly stated that the imposition of sentence is a function for the trial court and that a sentence as imposed would not meet appellate interference except under unusual or extraordinary circumstances. One need only look at the citator under the case of *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673, to note the many citations to that case which announces that principle. In *Taylor*, the court noted that the trial judge has a superior opportunity to make a sound determination concerning the punishment to be imposed from a vantage point superior to that of an appellate tribunal. If that reasoning is applicable on appellate review of sentence, then it certainly is valid upon resentencing under new statutory guidelines as to the quantum of punishment to be imposed. It seems to me that the majority opinion violates the princi-

ple set forth in *Taylor* by imposing a minimum term in excess of 1 year when the trial court in fixing the minimum was not subject to nor apparently concerned with that language and limitation now applicable.

Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—4(b)) provides that the court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is *required* to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record. In this case, the defendant had a prior sentence of 1 to 3; the trial court, having an option to impose a maximum sentence of 20 years, chose instead to impose a consecutive sentence, which certainly was not required to protect the public, considering the options that were available. The trial court in this case could have imposed a sentence that was meaningful, realistic and would be operative to protect the public within the language of the Unified Code of Corrections without the use of a consecutive term of imprisonment, and indeed upon this record the consecutive term serves only to aggravate the bookkeeping.

The imposition of a consecutive sentence of 4 to 7 in the face of a prior sentence of 1 to 3 effectively precludes consideration by the parole authorities of parole upon the first sentence and for all practical purposes, requires that the defendant serve the maximum of the initial sentence before he undertakes to commence service upon the consecutive sentence; thus, the trial court in this case interposed itself with reference to the prior conviction. Further, that which the statute now requires prior to the imposition of a consecutive sentence is not found in this record. Thus, as I see it, the imposition of consecutive sentence was arbitrary and erroneous and I would vacate the sentence, remand this case to the circuit court with directions to impose sentence as is now contemplated by the Unified Code of Corrections.