THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES STRICKLER, Defendant-Appellant.

Fifth District   No. 75-452

Opinion filed April 5, 1977.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's
Office, of Mt. Vernon, for appellant.

K. Scott Wilzbach, State's Attorney, of Salem (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Charles Strickler, was charged in the circuit court of Marion County with two counts of burglary. Following a jury trial in which defendant was found guilty as charged he was sentenced to two consecutive terms of imprisonment of 2½ to 7½ years. Defendant appeals the judgment entered by the trial court.

Defendant presents three issues for review: (1) whether the trial court erred in making a comment in the presence of the jury; (2) whether the court erred in allowing cross-examination of three defense witnesses allegedly showing defendant was a bigamist; and (3) whether the court erred in imposing two consecutive sentences.

Briefly stated, the facts of this case are that on August 24, 1974, between 10:30 and 10:45 p.m., three high school seniors saw defendant and an accomplice at an Amoco Service Station. Defendant appeared to be prying off a panel from a garage door with a tire tool. Shortly thereafter they saw defendant inside the station crawling out, head first, through the hole thus made. He was holding the tire tool and a small box. He and his accomplice then left the scene in a car which was followed by the witnesses. While continuing their pursuit, the witnesses contacted the police who then apprehended defendant. A tire tool was found in defendant's car along with loose change. Defendant's pants pockets appeared to be "bulging" with coins. Thereafter it was determined that a coin box was missing from the Amoco Service Station. The police also learned that a Sunoco Service Station had been similarly burglarized during the same evening.

Prior to his being searched, defendant was placed in a fingerprint room at the police station. Subsequently, police found certain distinctive coins and tokens hidden in that room, which were identified as those taken from the Sunoco Service Station. A mark in the metal facing of a cash register in the Sunoco Station was found to have been made by the tire tool taken from defendant's car.

Defendant first contends that he was deprived of a fair trial due to a comment made by the trial court in the presence of the jury. Following the testimony of the three high school seniors and testimony by a police officer that the tire tool had been found in defendant's car, the prosecutor offered the tire tool into evidence, whereupon the following colloquy occurred:

"Mr. Cooksey [defense attorney]: Well, Your Honor, I object. First of all there has been no showing here that any crimes have

been committed where a tire tool was used.

The Court: Well, the evidence does show that it was in the hands of this defendant, a tool like this, similar to this or the same as this. On that basis the exhibit will be admitted into evidence."

It appears that defendant then objected to the comment made by the court and asked permission to expand on his objection following an overnight recess. The next morning defendant moved for a mistrial and the court, after hearing arguments thereon, denied the motion. The trial court, however, expressed its willingness to instruct the jury to disregard the portion of the statement of which counsel complained. Defendant objected to any specificity in such an instruction so as not to call undue attention thereto. Therefore, the trial court simply admonished the jury to disregard "anything that was said by the court" at the time the tire tool was admitted into evidence.

Defendant contends that the trial court's statement was an improper expression of its opinion of defendant's guilt. In addition, he argues that the court's admonishment of the jury was so inadequate and delayed as to have had no curative effect.

■■ The State responds by asserting that the issue was waived by defendant's failure to make a timely objection. From the record, however, it clearly appears that a timely objection was made and that with the court's permission an expanded argument on defendant's motion for a mistrial was had on the next morning. Defendant thus properly preserved the issue for review.

■■■ By his contention, defendant strains the plain language used by the trial court in arguing that such was an expression of opinion on ultimate factual matters, the credibility of witnesses and the weight to be given to their testimony. (See *People v. Finn*, 17 Ill. 2d 614, 162 N.E.2d 354.) The trial court's statement, "the evidence does show that it was in the hands of this defendant * * * " was no more than an explanation of his ruling admitting the tire tool over defendant's objection that "there has been no showing here that any crimes have been committed where a tire tool was used." Thus taken in context the comment was proper. (*People v. Rojas*, 68 Ill. App. 2d 171, 215 N.E.2d 140.) We note that, in any event, the court cured any error that may have been committed. That the court's admonition was framed in vague language and was given the morning after the alleged improper comment was made were both a consequence of defendant's own requests. Defendant is thus estopped from claiming that these points lessened the impact of the court's curative instruction. Accordingly, we find no merit to defendant's contention.

Defendant next contends that he was denied a fair trial due to the State's cross-examination of three defense witnesses concerning defendant's marriages to two of them. The defense witnesses were

Martha Melton, defendant's mother-in-law, and her two daughters, Louise Strickler and Phyllis Torum Strickler. The witnesses testified about defendant's activities on the day of the crime in connection with his alibi defense. Martha Melton stated on cross-examination that Louise was married to defendant and that although Phyllis had once told her that she had married defendant, the witness had no first-hand knowledge of Phyllis' marital status. Louise stated that she was married to defendant. Phyllis stated in effect that she had been married to defendant. In chambers, the State informed the court that it had evidence that defendant had been married to both Louise and Phyllis during the same time.

Defendant argues that the trial court erred in allowing cross-examination of the witnesses concerning their relationship with defendant since the jury may have inferred defendant's bigamy and, if so, this was improper evidence of the commission of another crime by defendant.

The scope of the prosecution's cross-examination of defense witnesses is a matter of discretion for the trial court. In *People v. Halteman,* 10 Ill. 2d 74, 86, 139 N.E.2d 286, 294, the court stated:

> "As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere."

In cross-examination, inquiry may properly be made reasonably tending to show an interest, a bias or a motive to testify falsely. (*People v. Mason,* 28 Ill. 2d 396, 192 N.E.2d 835; *People v. Hanks,* 17 Ill. App. 3d 633, 307 N.E.2d 638.) The State may properly cross-examine defense witnesses concerning their relationship to a defendant in order to ascertain any interest they may have in the outcome of the trial, any feelings of bias and any motive to testify falsely in favor of the accused. (*People v. Bonds,* 132 Ill. App. 2d 827, 270 N.E.2d 575, and cases cited therein.) A defendant's relationship to the witnesses who testified in his behalf is a proper subject for a jury to consider. *People v. Kriston,* 12 Ill. App. 3d 18, 297 N.E.2d 206.

■■ Defendant's marriage to two of his witnesses both of whom are daughters of a third witness is clearly a relevant subject of inquiry particularly in light of the financial and emotional ties between the witnesses and defendant. The possible danger that evidence of bigamy may create an inference that defendant has a propensity to commit crimes, specifically the burglaries in question, is minimal. Moreover, the record shows that the State avoided suggesting bigamy in its questioning and such could only at best be inferred by a lack of any testimony

concerning a divorce between defendant and Phyllis. Consequently, we find no abuse of discretion resulting in manifest prejudice to defendant by the trial court's allowance of the cross-examination of the witnesses. Nor do we find any merit to defendant's argument that since the jury may have reasonably inferred that defendant and Phyllis were divorced, the cross-examination in this respect could have had no probative value and could only have served to prejudice defendant. To the extent the prosecutor avoided suggesting that defendant was still married to Phyllis, while it arguably may have lessened his showing of bias on the part of the witness, it also lessened the possibility of prejudice that may have resulted by his cross-examination.

Defendant lastly contends that his two consecutive 2½- to 7½-year sentences should be reduced to concurrent sentences since the aggregate of the two sentences is less than what the trial court could have imposed for a single burglary and thus defendant concludes consecutive sentencing was "unnecessary."

In so arguing, defendant relies on *People v. Dawson*, 30 Ill. App. 147, 332 N.E.2d 58, and *People v. Kruse*, 37 Ill. App. 3d 475, 346 N.E.2d 169, *appeal allowed*, 63 Ill. 2d 560. These two Fourth District Appellate Court cases involved an interpretation of section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b)) which provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set · forth in the record."

In *Dawson*, the defendant was convicted of burglary and sentenced to probation. While on probation, he was convicted of two other burglaries for which he received two concurrent sentences of one to five years imprisonment. As a consequence thereof, the defendant's probation was revoked and a sentence was imposed of three to 12 years to run consecutively to his one- to five-year sentences. On appeal from the consecutive sentence, the court noted that the aggregate of his sentences totaled four to 17 years. On the basis of section 5—8—4(b) the court held:

> "It is clear that the consecutive sentence was not 'required to protect the public from further criminal conduct by the defendant' since the trial court imposed sentences lesser in nature than that available for the offense of burglary, the same being a Class 2 felony with a provision for a possible 20-year maximum term." (30 Ill. App. 3d 147, 148, 332 N.E.2d 58, 59.)

Underlying *Dawson* is the court's reasoning that since the aggregate maximum of the consecutive burglary sentences was less than the

maximum sentence the trial court could have imposed for a single burglary, the trial court could not have been of the opinion that consecutive sentences were necessary in order to protect the public from any continuing criminal propensities of the defendant. Therefore the court modified the defendant's three- to 12-year sentence to run concurrently with his previously imposed sentences.

In *Kruse*, in which our supreme court has allowed the State's petition for leave to appeal, the court followed its holding in *Dawson*. Here the defendant received consecutive sentences of 192 days for criminal damage to property and one to three years for burglary. In modifying the sentences to run concurrently the court stated:

> "Since the aggregate of the two terms imposed here to be served consecutively was not as great as the sentence that could have been imposed for the burglary alone, it cannot be said that consecutive sentencing was necessary in order to protect the public from continuing criminal propensities of the defendant." 37 Ill. App. 3d 475, 477, 346 N.E.2d 169, 170.

■■ It is well established that a trial court has the discretion to impose consecutive sentences, and where the sentences imposed are within statutory limits, the standard of review is whether the trial court abused its discretion. (*People v. Wright*, 32 Ill. App. 3d 736, 336 N.E.2d 18; *People v. Taylor*, 29 Ill. App. 3d 1066, 332 N.E.2d 188; *People v. Nicks*, 23 Ill. App. 3d 435, 319 N.E.2d 531; *People v. Dailey*, 15 Ill. App. 3d 214, 304 N.E.2d 156.) Section 5—8—4(b) sets forth the guidelines which must be followed by a trial court in exercising its discretion. To impose a consecutive sentence, the trial court must be of the opinion that such a penalty is required to protect the public from further criminal conduct by the defendant in light of the nature and circumstances of the offense and the history and character of the defendant. As the court in *Dawson* and *Kruse* construes section 5—8—4(b), however, it contains an additional requirement limiting the authority of a trial court to impose a consecutive sentence, such that the resulting aggregate maximum sentence must be of sufficient magnitude as to be in excess of the maximum sentence which could have been imposed had the sentence run concurrently. We do not find such a limit of the trial court's authority mandated by the statutory provision. Moreover, *Dawson* and *Kruse* require us on review of the case at bar to irrebuttably presume that since the resulting aggregate maximum sentence is not of such a magnitude, then the trial court was not and could not have been of the opinion that the consecutive sentence was necessary in order to protect the public from continuing criminal propensities of the defendant. Such a presumption is contrary to the standards of review applied in prior cases. (*People v. Taylor*, 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Reynolds*, 38 Ill. App. 3d 788, 348 N.E.2d 864; *People v. Wright*, 32 Ill. App. 3d 736, 336 N.E.2d 18; *People v.*

*Taylor*, 29 Ill. App. 3d 1066, 332 N.E.2d 188; *People v. Nicks*, 23 Ill. App. 3d 435, 319 N.E.2d 531; *People v. Dailey*, 15 Ill. App. 3d 214, 304 N.E.2d 156.) We note that *Reynolds, Nicks* and *Dailey* are Fourth District Appellate Court cases which are inconsistent with *Dawson* and *Kruse*. As stated in a dissenting opinion in *Kruse*:

> "Having determined to impose a sentence of imprisonment, the trial judge must then determine the duration of the period of incarceration. It seems to me that the formula utilized in prescribing that period should not concern this court. What difference does it make whether the trial judge adopts the formula required under the circumstances present in this case and elevates the limits of the second sentence, or arrives at the same period of imprisonment by use of the consecutive sentence? Under the statute I believe that it is within his discretion to adopt the latter method. The only concern of this court should be whether the sentence imposed is excessive." 37 Ill. App. 3d 475, 478, 346 N.E.2d 169, 171.

■■ In the case at bar, defendant's contention that the trial court abused its discretion in imposing a consecutive sentence is solely based on a mathematical comparison of the aggregate of the consecutive sentences imposed, against what could have been permissibly imposed for a single burglary. Defendant does not dispute the basis of the trial court's finding of a need to protect the public from the continuing criminal propensities of defendant. The record shows that defendant, who was at the time 39 years old, had three prior burglary convictions and that he committed the instant burglaries only nine days after his release from the penitentiary due to a reversal of his last prior burglary conviction. In addition, defendant's presentence report shows a history of gambling and drinking, and that twice while intoxicated defendant severely beat his wife, Phyllis. The trial court set forth the basis upon which it found consecutive sentences were required to protect the public from further criminal conduct by defendant and the record shows ample support for the court's finding. Defendant admits that indirectly the trial court intended to impose an approximate five- to fifteen-year sentence for the two burglaries combined. Were we to follow the rulings of *Dawson* and *Kruse*, we must then reduce that aggregate penalty by one-half. Such a reduction is unwarranted by the record and therefore this we decline to do. Accordingly, we affirm the judgment and sentences of the circuit court of Marion County.

Affirmed.

G. J. MORAN and JONES, JJ., concur.