THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD HUNT, Defendant-Appellant.

Third District    No. 81-117

Opinion filed September 30, 1981.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, Ronald Hunt, appeals from his conviction for armed robbery following a jury trial in the Circuit Court of Peoria County and from his 40-year extended-term sentence. He presents the following issues for review: whether the court erred in allowing a defense witness to testify at the instance of the defendant but over the objection of defense counsel, and whether the sentencing order should be vacated and the cause remanded for resentencing because the court improperly considered that the defendant received the proceeds from the armed robbery as an aggravating factor. He also requests this court to vacate his extended term sentence if this court reverses his Tazewell County armed robbery conviction. (*People v. Hunt* (1981), 99 Ill. App. 3d 958, 426 N.E.2d 568.) Our affirmance of that conviction has rendered that issue moot.

The defendant and his brother, Donald Hunt, were charged by information and subsequently indicted with the June 5, 1980, armed robbery of James Traphagan. The defendant's brother pleaded guilty to armed robbery prior to the defendant's trial. At trial, the prosecution's evidence tended to establish the following facts. On June 5, 1980, at

approximately 11 p.m., two men armed with a shotgun and pistol entered Hogan's Place, a tavern in Dunlap, Illinois. Both men wore nylon stockings over their faces, and one wore a hat. They ordered the patrons to lie on the floor, while one of the robbers went behind the bar to the cash register. He then ordered Traphagan, the bartender, to give him the money contained in the register. The other robber took money from the wallets of the patrons, including Donald Jones. The robbers then fled from the bar. Traphagan immediately attempted to follow the robbers. He drove east from Dunlap and observed another car also leaving Dunlap at a high rate of speed. The driver wore a hat similar to that worn by one of the robbers. The car was later identified as the defendant's.

Traphagan was unable to identify the defendant in court, but Jones did. Moreover, Jones identified the defendant from a lineup of six men with stocking masks at the Tazewell County sheriff's office on June 20, 1980.

The defendant's first witness was Benny Hale, who testified that he and his wife entertained the defendant and Kim Smith at their home during the night of June 5. The defendant and Smith arrived at approximately 8 p.m., and remained until the early morning hours. On cross-examination, Hale admitted he failed to recall the events of June 5 when he was first questioned by defense counsel just four days previous to the trial, but had asked for time to refresh his recollection.

The only other defense witness was the defendant's brother, Donald Hunt. Before Donald assumed the witness stand and while the jury was excused, defense counsel informed the court that he had spoken with Donald about his possible testimony and believed the admission of such testimony was contrary to his professional judgment and his client's best interest. Nevertheless, the defendant insisted on calling Donald to testify. The court then directly inquired of the defendant whether he wished for his brother to testify, to which the defendant affirmatively responded. The court then permitted Donald to testify. Donald, who had previously pleaded guilty and been sentenced for the June 5 armed robbery, testified that he, the defendant, Kim Smith, the Hales, and several others attended a party at Barbara Avery's during the evening of June 5. At 9 p.m., Donald borrowed the defendant's car without informing him and met two persons whom Donald refused to identify. The three drove to Hogan's Place, where Donald, carrying a handgun, and another man, robbed the tavern and its patrons. Donald later returned to Avery's but found no one there. At the conclusion of this testimony and final arguments, the jury returned a guilty verdict.

The presentence report revealed the defendant had a number of prior convictions including a 1980 Tazewell County armed robbery conviction. At the sentencing hearing, the court imposed an extended

term sentence of 40 years' imprisonment on the basis of the Tazewell County armed robbery conviction. The court also considered the numerous previous convictions, the defendant's receipt of compensation, threatened harm, and lack of rehabilitative potential in aggravation.

The defendant first asserts that by disregarding defense counsel's objections to calling Donald to testify and by condoning such testimony at the insistence of the defendant, the court committed error. He argues such a ruling intruded upon a sacrosanct area of defense counsel's tactical discretion. According to the defendant's argument on appeal, the right to receive effective assistance of counsel includes a grant of authority to counsel to make binding decisions of trial strategy based upon the exercise of his or her professional judgment, including the decision regarding the calling of witnesses. Thus, where the defendant is represented by experienced counsel, as here, the court should recognize this grant of trial strategy discretion and allow counsel to prevail over the defendant's wishes to the contrary. In the instant case, the defendant claims the court's failure to defer to defense counsel's course of action resulted in the admission of testimony which conflicted substantially with Hale's alibi testimony.

In support of the proposition that counsel exercises an exclusive power to make certain tactical decisions, the defendant relies upon standard 5.2 of the A.B.A. Standards Relating to the Defense Function (1971). That standard provides:

> "(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf.
>
> (b) The decisions on what witness to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.
>
> (c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation."

The commentary to this standard makes clear that such a division of responsibilities is intended to provide the defendant with a competent, effective counsel who exercises his or her experienced tactical judgment without suffering "the disconcerting experience of trying to conduct the

examination of the witness or follow opposing arguments or the judge's charge while the client 'plucks at his sleeve' offering gratuitous suggestions." A.B.A. Standards Relating to the Defense Function §5.2, at 240 (1971).

■■ Nevertheless, we hold that the standard should not be used to absolve the overzealous defendant who intrudes into this area of professional discretion by insisting on a contrary course of action after counsel has explained the possible disadvantages of the insisted tactic. Indeed, after examining the commentary and the case law invoking the standard, we find that Standard 5.2 is most commonly used to examine the effectiveness of defense counsel's representation to ensure that he received competent assistance of counsel, and not to rectify a disagreement between counsel and the defendant on the use of trial tactics. (See A.B.A. Standards Relating to the Defense Function §5.2, at 240-41 (1971); *United States v. Moore* (D.C. Cir. 1976), 529 F.2d 355.) Here there is no question regarding counsel's effectiveness. Thus, we hold that where counsel has explained on the record the consequences of a particular tactic but the defendant still insists on taking such action, he is estopped from claiming on appeal that the ruling countenancing the tactic which was made upon his insistence constituted prejudicial error even though such insistence invaded the province normally reserved for defense counsel. *Cf. People v. Hamelin* (1979), 75 Ill. App. 3d 445, 394 N.E.2d 566; *People v. Strickler* (1977), 47 Ill. App. 3d 419, 362 N.E.2d 28.

■■ The defendant also contends his 40-year extended-term sentence must be vacated and the cause remanded for resentencing because the circuit court improperly characterized the receipts of the armed robbery as an aggravating factor. We agree and accordingly vacate the sentencing order and remand for resentencing. During the sentencing hearing the court considered the receipt of compensation for committing the offense as an aggravating factor (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(2)) as follows:

> "The next item of aggravation is, received compensation. Now whether that means you are hired to perform the job or whether you get money from the armed robbery as the spoils of the crime, I don't need to argue that now, but you did during these armed robberies receive the proceeds of the crime, the monies.
>
> Whether that is what they mean by received compensation, I don't know, but you did profit from the armed robberies. That the intent of this armed robbery, was to get money."

Although the court expressed some question whether the receipts were properly classified as compensation for the purpose of aggravating the sentence, the court nonetheless did consider it in making its sentencing determination. In *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906,

the supreme court ruled that the receipt of proceeds from property-related offenses does not constitute the aggravating factor of receiving compensation for the offense. Only where a defendant received remuneration beyond the booty of the offense is the factor applicable. Thus, although the court considered other aggravating factors in its sentencing determination, the defendant is entitled to a new sentencing hearing because only the trial court can determine how much weight is accorded to the improper factor.

Accordingly, we affirm the defendant's conviction for armed robbery, and we vacate and remand the sentencing order to the Circuit Court of Peoria County.

Affirmed in part, vacated and remanded in part.

HEIPLE and STOUDER, JJ., concur.